MEMORANDUM *
I.
Noe Cuenca-Vega was born in Mexico in 1979 and moved to the United States at age 13 with his mother, who became a naturalized United States citizen.[1] In 1998, Cuenca became a lawful permanent resident. In 2000, he pleaded no contest to possession of methamphetamine. He served his sentence of 60 days in a county jail and was removed to Mexico on September 24, 2002. On May 13, 2010, Cuen-ca was arrested by a U.S. Immigration and Customs Enforcement agent, having reentered the United States without inspection.[2] He was convicted of criminal reentry, 8 U.S.C. 1326(a), at a jury trial and sentenced to 77 months of federal imprisonment.
Prior to trial, Cuenca had moved to dismiss the criminal reentry indictment on the ground that his 2002 removal order was invalid. He argued that he was denied due process in his removal hearings because the Immigration Judge (IJ) did not have sufficient evidence to conclude that his 2001 conviction was a “controlled substances offense” within the meaning of 8 U.S.C. § 1227(a)(2)(B). On appeal, Cuenca argues that he was also denied due process on the grounds that the IJ failed to advise him of his apparent eligibility for *690 voluntary departure, and that his immigration lawyer was ineffective in failing to file an appeal. We consider here only the IJ’s failure to advise Cuenca of his apparent eligibility for voluntary departure.
II.
A defendant charged with illegal reentry can prevail on a collateral challenge to his underlying removal when he demonstrates (1) that the IJ failed to inform him of his apparent eligibility for relief and (2) that he had plausible grounds for relief. See United States v. Rojas-Pedroza, 716 F.3d 1253, 1262-63 (9th Cir.2013); United States v. Gonzalez-Valerio, 342 F.3d 1051, 1054 (9th Cir.2003). The parties agree that Cuenca has satisfied the first requirement. The government concedes that “the IJ was obligated to advise Cuenca of his apparent eligibility for voluntary departure during the 2002 deportation proceedings;” “[t]he record does not contain the required advisement;” “[a]n IJ’s failure to advise an alien of those forms of relief from deportation for which he is apparently eligible constitutes a due process violation;” and “the parties agree that the IJ erred.” The parties dispute whether Cuenca has satisfied the second requirement. The government argues that Cuenca has not demonstrated that he had plausible grounds for relief because “the record is silent on whether defendant would have availed himself of the opportunity for voluntary departure had it been offered” and “the record shows that defendant was actively pursuing a strategy to avoid removal altogether.”
We reject this argument. The government overstates Cuenca’s burden to demonstrate a plausible ground for relief. Under the law of the circuit, Cuenca need make only a prima facie showing of prejudice.
[A]n alien who wishes to challenge the legality of a previous deportation bears the initial burden of producing evidence indicating that a violation of an INS regulation occurring during the alien’s deportation prejudiced his or her interests protected by the regulation in such a manner so as actually to have had the potential for affecting the outcome of the proceedings. Once such a prima facie showing of prejudice is made, the burden then shifts to the government to show that the violation could not have changed the outcome of the deportation proceedings.
United States v. Cerda-Pena, 799 F.2d 1374, 1379 (9th Cir.1986). See also United States v. Gonzalez-Valerio, 342 F.3d 1051, 1054 (9th Cir.2003). The government’s concession that Cuenca was eligible for pre-conclusion voluntary departure amounts to a concession that Cuenca has made a prima facie showing of prejudice. Cuenca “does not have to show that he actually would have been granted relief. Instead, he must only show that he had a ‘plausible’ ground for relief from deportation.” [3] United States v. Arrieta, 224 F.3d *691 1076 (9th Cir.2000). It then becomes the government’s burden, not Cuenca’s, to show that the violation could not have changed the outcome of the proceedings.
The government argues that at the time of the deportation proceedings, Cuenca was attempting to expunge his criminal conviction and thus would not have accepted an offer of voluntary departure. This does not meet the government’s burden. Cuenca’s seeking of expungement was not incompatible with accepting voluntary departure. Although Cuenca would have had to concede removability to obtain voluntary departure, he could nonetheless have continued to seek expungement from abroad, had he not obtained it prior to accepting voluntary departure.[4] If he obtained expungement afterwards, he could have reopened his removal proceedings. See Cardoso-Tlaseca v. Gonzales, 460 F.3d 1102, 1106 (9th Cir.2006) (“[A] deportation based upon an invalid conviction is not ‘legally executed’ and ..., therefore, the defective deportation may be reopened after the petitioner has left the country.”). Alternatively, he could have applied for a new visa through his United States citizen mother. In addition to being compatible •with his pursuit of expungement, a strategy of accepting voluntary departure presented at least one strategic advantage for Cuenca: at minimum, he would not have been subject to the criminal reentry statute unless he was subsequently deported.
The government argues that our review of Cuenca’s claim should use a plain error standard because Cuenca did not present before the district court any discussion of the IJ’s failure to advise him of his apparent eligibility for voluntary departure. This argument is incorrect. “Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below.” Yee v. City of Escondido, Cal., 503 U.S. 519, 534, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992). Here, Cuenca’s voluntary departure argument “is not a new claim. Rather, it constitutes an alternative argument to support what has been his consistent claim from the beginning,” United States v. Pallares-Galan, 359 F.3d 1088, 1095 (9th Cir.2004), namely, that the 2002 deportation order was invalid as violative of due process: in short, the invalid order cannot support a conviction for criminal reentry. Thus, we review the denial of a motion to dismiss de novo, as we do “when the motion to dis *692 miss is based on an alleged due process defect in the underlying deportation.” Id. at 1094. Under de novo review, it is clear that Cuenca has made a prima facie showing of eligibility for relief and of prejudice,[5] and that the government has not met its burden of showing that the due process violation could not have changed the outcome of the proceedings.
Even under plain error review, Cuenca would prevail. “Rule 52(b) [of the Federal Rules of Criminal Procedure] permits an appellate court to recognize a ‘plain error that affects substantial rights’ even if the claim of error was ‘not brought’ to the district court’s ‘attention.’ ” United States v. Marcus, 560 U.S. 258, 130 S.Ct. 2159, 2164, 176 L.Ed.2d 1012 (2010)(quoting Fed.R.CrimP. 52(b)). The “plain error rule ... sets forth criteria that a claim of error not raised at trial must satisfy.” Id. at 2166. Under plain error review, a defendant must demonstrate that
(1) there is an “error”; (2) the error is “clear or obvious, rather than subject to reasonable dispute”; (8) the error “affected the outcome of the district court proceedings”; and (4) “the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.”
United States v. Marcus, 560 U.S. 258, 130 S.Ct. 2159, 2164, 176 L.Ed.2d 1012 (2010) (quoting Puckett v. United States, 556 U.S. 129, 129, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009))(alterations by the Supreme Court).
There is no doubt that holding the deportation order valid was a legal error that was clear and obvious under the law.[6] The government argues that Cuenca did not satisfy the third requirement for plain error because he did not show that “the error actually prejudiced his substantial rights.” The third requirement means that “there must be a reasonable probability that the error affected the outcome of the trial.” United States v. Marcus, 130 S.Ct. at 2164. Here, the legal error affected the outcome of the trial because the due process violation would have required the court to dismiss the indictment with prejudice.
The government also argues that the error did not “seriously affeet[] the fairness, integrity or public reputation of judicial proceedings” because “[a]fter his 2002 removal Cuenca was removed from the United States four separate times.” Cuenca’s behavior subsequent to his deportation has no bearing on whether the district court proceedings were fair when his 2002 deportation was deemed valid. *693 When an individual is convicted based on an invalid deportation order that violated his right to due process, it must necessarily have a serious effect on the fairness and integrity of judicial proceedings.
III.
Because Cuenca prevails on his voluntary departure argument, we need not consider his contentions regarding the insufficiency of the evidence or ineffective assistance of counsel.
REVERSED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

. The record does not indicate when Cuenca's mother was naturalized, but it does show that Cuenca obtained his lawful permanent resident status through his mother on November 19, 1998. In order to obtain adjustment of status for her son, Cuenca’s mother must already have been a citizen. 8 U.S.C. § 115 l(b)(2)(A)(i). We can therefore assume that she was a citizen by 1998.

. After being deported, Cuenca was found in the United States and removed four additional times before the entry at issue here. The government appears to concede that these removals were reinstatements of Cuenca’s 2002 removal order and therefore cannot separately support Cuenca’s current conviction under 8 U.S.C. § 1326. See United States v. Arias-Ordonez, 597 F.3d 972, 978 (9th Cir.2010).

. "Where the relevant form of relief is discretionary,” the noncitizen must also "make a 'plausible' showing that the facts presented would cause the Attorney General to exercise discretion in his favor.” Rojas-Pedroza, 716 F.3d at 1263 (quoting United States v. Barajas-Alvarado, 655 F.3d 1077, 1089 (9th Cir.2011)). Cuenca has made a plausible showing, uncontested by the government, that the IJ would have exercised discretion in his favor. "[I]n exercising discretion on a voluntary departure application an IJ should take into account both favorable and unfavorable factors.” Rojas-Pedroza, 716 F.3d at 1264 (internal citation and quotation marks omitted). Favorable equities include "long residence” and "close family ties to the United States.” Id. at 1265. Unfavorable equities include "the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any crimi *691 nal record; and any other evidence of bad character or the undesirability of the applicant as a permanent resident.” Id. (internal citation and quotation marks omitted).
At the time Cuenca was ordered removed, he had several positive equities: he had been in the United States for ten years, since age 13; his mother was a United States citizen; he had graduated from a California high school; and he had been employed from 1999 to 2002. His negative equities at the time were only the predicate conviction for possession of methamphetamine, for which he received a sentence of 60 days, and some traffic offenses. These offenses are not sufficiently serious to make it implausible that he would have been granted relief. See, e.g., In re: Orridge, 2011 WL 3443885 (BIA 2011) (recognizing that positive equities could outweigh the noncitizen’s conviction for possession of crack cocaine); In re: Francisco Franco, 2005 WL 952426 (BIA 2005) (affirming discretionary grant of voluntary departure to noncitizen convicted of possession of cocaine); In re: Luis Alonzo Gonazles-Figeroa, 2006 WL 729784 (BIA 2006) (affirming grant of voluntary departure where petitioner had four convictions for assault, one for resisting arrest, and numerous other arrests).

. Cuenca would have needed to concede only the fact of his conviction, not the factual allegations underlying the conviction, so that accepting voluntary departure and seeking ex-pungement would not have been inherently contradictory postures. See Reyes-Torres v. Holder, 645 F.3d 1073, 1077 n. 1 (9th Cir.2011).

. All of the facts necessary to sustain the voluntary departure argument were before the district court in the transcripts of the deportation proceedings.

. The government cites United States v. Turman, 122 F.3d 1167, 1170 (9th Cir.1997), for the proposition that a plain error is an error that is "so clear-cut, so obvious, a competent district court judge should be able to avoid it without benefit of objection.” The Supreme Court explicitly rejected Turman’s approach in Henderson v. United States, - U.S. -, 133 S.Ct. 1121, 1129, 185 L.Ed.2d 85 (2013), holding that there was plain error even when the District Judge had no way to know at the time he made his ruling that it was error, "and perhaps not even clairvoyance could have led him to hold to the contrary.... [Pjlain error review is not a grading system for trial judges.” The government is therefore incorrect when it asserts that "Cuenca must show that a 'competent' district court would have identified those errors — and determined if they prejudiced Cuenca — without development of the record by the parties.” Here, finding the deportation to be valid was clear error, satisfying the first two criteria, because Cuenca was not advised of his apparent eligibility for relief, as the government concedes, and because, whether or not it was called to the district court's attention, he had plausible grounds for relief, unrebutted by the government, as the record reveals.