13-2540; 13-2710
United States v. Mazza

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of December, two thousand fourteen.

Present:
        ROBERT A. KATZMANN,
               *Chief Judge*,
        PIERRE N. LEVAL,
        PETER W. HALL,
               *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

        *Appellee*,

        v.                                      No. 13-2540
                                             No. 13-2710[*]

DOMINICK MAZZA, AKA SEALED DEFENDANT #4,
MAZZA & SONS, INC., AKA SEALED DEFENDANT #5,

        *Defendants–Appellants*.

_____

For Defendants-Appellants:   SUSAN C. WOLFE, Hoffman & Pollok LLP, New York, NY

For Appellee:             THEKLA HANSEN-YOUNG (Allen M. Brabender and Todd W. Gleason, *on the brief*), *for* Sam Hirsch, Acting Assistant Attorney General, Washington, DC

---

[*] These appeals were consolidated with *United States v. Nicastro*, No. 13-2566, with *United States v. Mazza*, No.13-2540 designated as the lead case. We resolve Defendant-Appellant Cross Nicastro's appeal in a separate summary order filed concurrently.

Appeal from a judgment of the United States District Court for the Northern District of New York (Hurd, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgments of the district court be and hereby are **AFFIRMED** in part, and **VACATED** and **REMANDED** in part.

Dominick Mazza ("Mazza") and Mazza & Sons, Inc. (collectively "Mazza defendants") appeal from June 19, 2013 judgments of conviction entered by the United States District Court for the Northern District of New York (Hurd, *J.*) following an October 16, 2012 jury verdict. The jury found both Mazza defendants guilty of: (1) conspiracy to, *inter alia*, violate CERCLA in violation of 18 U.S.C. § 371; (2) a substantive CERCLA violation under 42 U.S.C. § 9603(b); and (3) making false statements in violation of 18 U.S.C. § 1001. The jury also found Mazza & Sons guilty of obstruction of justice in violation of 18 U.S.C. § 1519. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

The Mazza defendants argue that their convictions should be vacated and a new trial ordered based on the following jury instruction:

> Dominick Mazza, as a defendant in this case, is considered an interested witness. Such an interest in the outcome creates a motive to testify falsely and may sway the witness to testify in a way that advances self-interests. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of the testimony and accept it with great care.

Supplemental App. 411. Because the Mazza defendants failed to object to this instruction below, we review for plain error pursuant to Rule 52(b) of the Federal Rules of Criminal Procedure. To succeed under that standard, the Mazza defendants must demonstrate that (1) there was an error; (2) the error was "clear and obvious, rather than subject to

2

reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (internal quotation marks and citation omitted).

It is axiomatic that "a defendant does not always have a motive to testify falsely. An innocent defendant has a motive to testify truthfully." *United States v. Gaines*, 457 F.3d 238, 246 (2d Cir. 2006). Accordingly, "[t]he critical defect in a jury instruction that says the defendant has a motive to lie is its assumption that the defendant is guilty. That defect is not cured by a further charge that a defendant can still be truthful." *Id.* at 247. In 2007, we expressly held that "an instruction that the defendant's interest in the outcome of the case creates a motive to testify falsely impermissibly undermines the presumption of innocence because it presupposes the defendant's guilt." *United States v. Brutus*, 505 F.3d 80, 87 (2d Cir. 2007) (citing *Gaines*, 457 F.3d at 246–47). We had previously instructed "district courts in the circuit not to charge juries that a testifying defendant's interest in the outcome of the case creates a motive to testify falsely." *Gaines*, 457 F.3d at 247. Instead, "a witness's interest in the outcome of the case ought to be addressed in the court's general charge concerning witness credibility." *Id.* at 249. We provided two examples of acceptable instructions in the event that "an additional free-standing charge on the defendant's testimony [be] deemed appropriate." *Id.*

The government's strenuous attempt to distinguish the instruction given in this case from those held constitutionally impermissible in *Gaines* and *Brutus* is unavailing and relies on ambiguities in *Gaines* that were resolved clearly and unequivocally one year later in *Brutus*. Specifically, in *Brutus*, we clarified that the impermissible instruction is not tempered when the

court "omits additional language specifically cautioning the jury to carefully scrutinize and weigh the defendant's testimony," nor when the court includes "other, more favorable language." 505 F.3d at 87. The court's instruction violated our mandate issued five years prior and was clearly erroneous.

We next determine whether the Mazza defendants have met their burden to demonstrate "a reasonable probability that the error affected the outcome of the trial," thereby rendering the instruction prejudicial and detrimental to their substantial rights. *Marcus*, 560 U.S. at 262. We generally look to the evidence proffered to determine if it is a "close case," that "boiled down to the credibility of [the defendant's] testimony." *Gaines*, 457 F.3d at 250; *see also Brutus*, 505 F.3d at 89 ("This was not a close case."). We address each count of conviction in turn.

The false statement count was based on Mazza's denial to federal agents that a Delaware facility ("DRPI") rejected any of his company's loads after September 2006, when in fact DRPI had rejected loads in November 2006. Mazza testified at trial that, at the time of his 2008 interview with those agents, he did not know of the November 2006 rejections. Knowledge is an element of the offense charged, and the only such element at issue here. Mazza asserts that the government presented no evidence supporting its allegation that he knew of the November 2006 rejections. The government fails to address this contention and points to no evidence—and we find none—indicating or implying that Mazza had actual or constructive knowledge. Accordingly, the false statement count hinges heavily on Mazza's credibility, creating a reasonable probability that the erroneous instruction affected the outcome of the trial on that count.

The government faces a similar problem with respect to the conspiracy count. While this is a multi-object conspiracy, the objective of committing acts that violate CERCLA is the only

one that can reasonably be attributed to these particular defendants in light of the record evidence. The government makes no argument to the contrary. As reflected in the parties' arguments addressing the sufficiency of the evidence, the central issue is therefore whether the Mazza defendants agreed to join the conspiracy to violate CERCLA. While the government did produce evidence suggesting tacit agreement, the jury was required to draw several fairly tenuous inferences in order to return a conviction. Because this count presents a very "close case," *Brutus*, 505 F.3d at 89, and because Mazza testified about issues relevant to the conspiracy's objective of violating CERCLA, including that Deck's inspector reported that Mazza's waste was "the greatest stuff he has ever seen," Supplemental App. 364, we conclude that it is reasonably probable that the erroneous instruction affected the jury's verdict on the conspiracy count.

By contrast, the government presented considerable evidence supporting a conviction for the substantive CERCLA count. For example, Williams testified that shortly before Mazza entered the agreement with Deck to dispose of waste, DRPI had constantly rejected Mazza's loads, and that Williams communicated to Mazza that they were rejected because they contained asbestos. Shortly thereafter, Mazza arranged to dispose of waste materials at the illegal dump, and those materials were later determined to contain asbestos. Although Mazza testified that the loads that tested positive for asbestos did not come from Mazza & Sons, thus placing his credibility at issue, we cannot conclude, in light of the considerable evidence supporting the government's case, that it is reasonably probable that the erroneous instruction affected the outcome of the CERCLA count.

Likewise, the government presented sufficient evidence on the obstruction of justice count for us to conclude that the conviction on that count did not hinge on Mazza's credibility.

5

The evidence showed that Mazza & Sons produced extensive documentation in response to a grand jury subpoena but did not include the manifests expressly requested in the subpoena for the two October 11, 2006 loads that had tested positive for asbestos. More importantly, nothing in the record indicates that the substance of Mazza's testimony had any bearing on this count, and the Mazza defendants do not argue otherwise. Finally, any significance that Mazza's testimony may have had is diluted by the fact that Mazza & Sons is a corporate entity, presumably with multiple agents whose actions, omissions, and knowledge may be imputed to it. Accordingly, it is improbable that the erroneous instruction affected the outcome of the trial on the obstruction count because the veracity of Mazza's testimony had little if any bearing on that count.

The district court's instruction was clearly erroneous in light of our holdings in *Gaines* and *Brutus*, and prejudiced the Mazza defendants on the false statement and conspiracy counts. We will vacate those convictions, however, only if the error, "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Marcus*, 560 U.S. at 262 (internal quotation marks and citation omitted). The fact that the district court gave this clearly erroneous instruction five years after our decision in *Brutus* is highly troubling. Perhaps most significant are the nature of the instruction itself and the reasoning underlying our decision in *Brutus*. This instruction undermines the presumption of innocence, which is not only one of the most fundamental principles of our criminal justice system but also one the principles most widely known and understood by the public at large. Given these specific circumstances, we conclude that the erroneous instruction seriously affected the integrity and public reputation of federal criminal trials.

On a final note, while we ultimately conclude that there was no prosecutorial misconduct that warrants reversal, *see United States v. Elias*, 285 F.3d 183, 190 (2d Cir. 2002), the panel made clear at oral argument, and we reiterate here, that we are disturbed by some of the prosecutor's behavior in this case, such as the prosecutor's comment during his cross-examination of Mazza that "hopefully you will remember me after today." App. 104. Federal prosecutors are held to the highest standard of professionalism, befitting both the venerated role they play in our judicial system and the sacrosanct nature of the tasks entrusted to them. This type of braggadocio simply has no place in the courtroom and falls below the level of respect and decorum that this Court—and the public at large—reasonably demands from attorneys representing the United States.

We have considered and decline to reach the Mazza defendants' remaining arguments. For the reasons articulated herein, Mazza's and Mazza & Sons' convictions for conspiracy (Count 1) and false statements (Count 7) are **VACATED**. Mazza's and Mazza & Sons' convictions for the CERCLA violation (Count 2), and Mazza & Sons' conviction for obstruction of justice (Count 5) are **AFFIRMED**.

The sentences imposed upon Mazza and Mazza & Sons are **VACATED**, and this case is **REMANDED** to the district court for re-sentencing and further proceedings consistent with this order.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

7