No. 111,407

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JERAMIE N. BERNEY,
*Appellant*.

SYLLABUS BY THE COURT

1.

Under K.S.A. 2014 Supp. 60-455(a), evidence that a person committed a crime on some other occasion is inadmissible to prove that the person has a criminal disposition and has committed another crime. If evidence of a prior crime is admitted for a different purpose, the trial court must give a limiting instruction informing the jury of the specific reason that evidence was admitted.

2.

Where evidence of other crimes is admitted without a limiting instruction but the defendant does not object, an appellate court reviews only for clear error. We first determine whether the jury instruction was legally and factually appropriate. Even if we find error, we may reverse only if we are firmly convinced that the jury would have reached a different verdict had the error not occurred. The party claiming error has the burden of establishing prejudice.

3.

In this case, the State presented evidence that the defendant had previously been arrested, and the court did not give a limiting instruction. The evidence presented to the

jury presented a credibility contest between the testimony of the defendant and that of the alleged victim, with no strong evidence other than the victim's testimony that undermined the defendant's version of events. On these facts, we find clear error in the district court's failure to give a limiting instruction.

4.

When a defendant asks for his court-appointed attorney to be replaced, the district court must make an appropriate inquiry if the defendant provides an articulated statement of dissatisfaction. That may be done by showing a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication. The failure to make an appropriate inquiry in that situation is an abuse of discretion.

5.

The district court in this case made an appropriate inquiry into the defendant's request for a new attorney by holding a hearing and addressing the defendant's concerns.

Appeal from Sedgwick District Court; TERRY L. PULLMAN, judge. Opinion filed July 10, 2015. Reversed and remanded with directions.

*Adam D. Stolte*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., PIERRON and STANDRIDGE, JJ.

*Per Curiam*: Jeramie Berney was convicted of theft. On appeal, he challenges the district court's failure to give the jury a limiting instruction after a detective testified that he had found Berney's photo in the "mug system" when creating a lineup—suggesting to jurors that Berney had prior arrests or convictions. The district court's failure to give a

limiting instruction that evidence of where the detective got Berney's photo could not be considered in deciding guilt in this case was clear error because no strong evidence was offered at trial. After carefully reviewing the full trial transcript, we conclude that a new trial must be ordered because the jury would have reached a different verdict had the instruction error not occurred.

FACTUAL AND PROCEDURAL BACKGROUND

The theft charge stemmed from allegations that Berney took a tip jar from El Matador Lounge belonging to Jo Ann Standifer, the bartender, on January 28, 2013. Berney had prior theft convictions, so he was charged with a more serious crime than simple theft—theft after two or more prior convictions. See K.S.A. 2014 Supp. 21-5801(b)(6).

At trial, Berney and Standifer disagreed about the details surrounding Berney's actions on January 28, 2013. Standifer testified that Berney came into the El Matador Lounge where she was working and began to play pool with her. After the pool games ended, Standifer claims she went back behind the bar and heard a patron yell that someone had stolen her tip jar. Standifer said she then witnessed Berney run out the front door and away from the bar.

Berney testified that he had seen Standifer outside of a QuikTrip that day and that she had invited him to El Matador for a few games of pool, free drinks, and crack cocaine. Berney claimed that when he had arrived at the bar, he gave Standifer $40 for crack cocaine. Berney testified that when Standifer reported to him she could no longer get the drugs, he and Standifer got into an argument about how she would repay him. Berney claimed it had been her idea for him to take the tip jar and that Standifer had instructed him to do it when she was not looking so that her boss and the other customers would not ask her to explain.

3

The only other witness to testify was Detective Joseph Kennedy, the lead investigator on the case. Kennedy testified that Berney's name was listed in the police report as a potential suspect. He said that after talking with Standifer, he had created a photo lineup that included Berney. When asked to describe how he created the photo lineup, Kennedy testified that he had searched a database of Sedgwick County mug shots for photos to use. Kennedy also specifically testified that he had found Berney's photo through the mug-shot system and that when he had presented the photo lineup to Standifer, she had identified Berney immediately. Berney did not object to the admission of Kennedy's testimony on these points or request that a limiting instruction be given to the jury.

The parties separately agreed at trial—outside the jury's presence—that the jury would not be told about Berney's prior theft convictions. Thus, the jury would only determine whether he had committed the theft at the El Matador Lounge, not whether he also had two or more prior theft convictions. Even so, the parties agreed that he would be sentenced for theft with prior convictions. The jury found Berney guilty of theft. Because he had two or more prior theft convictions, this offense became a Level 9 felony offense (while a first-time theft of the same money jar would have been a misdemeanor). See K.S.A. 2014 Supp. 21-5801(b)(4), (b)(6). Based on Berney's criminal-history score of "A," the most serious category, the district court imposed a 15-month prison sentence. Berney has appealed to this court.

ANALYSIS

Berney argues on appeal that the district court committed clear error when it failed to give a limiting instruction after the State introduced evidence that Berney had committed prior crimes. Berney argues that the State could not use this evidence—the fact that his photo was in the mug system—to prove that Berney was more likely to

4

commit a theft. Indeed, under K.S.A. 2014 Supp. 60-455(a), evidence that a person committed a crime on some other occasion is inadmissible to prove that the person has a criminal disposition and has committed another crime. If evidence of a prior crime is admitted for a different purpose, the trial court must give a limiting instruction informing the jury of the specific reason that evidence was admitted. *State v. Gunby*, 282 Kan. 39, 48, 144 P.3d 647 (2006).

Berney argues that the district court should have instructed the jury it could not consider the prior-crime evidence as evidence of his propensity to commit theft. Berney did not request such a limiting instruction at trial, but he claims that the district court's failure to give one was clearly erroneous because his case "amounted to a credibility contest" between him and Standifer and because evidence of his prior crimes was a significant factor in his case.

The Kansas appellate courts have consistently applied a "clearly erroneous" standard of review where, as here, a defendant neither requests a limiting instruction for evidence of prior crimes nor objects to its omission. *State v. Vasquez*, 287 Kan. 40, 51, 194 P.3d 563 (2008); *Gunby*, 282 Kan. at 58-59; *State v. Pitchford*, No. 101,904, 2010 WL 5139873, at *2 (Kan. App. 2010) (unpublished opinion) (citing *State v. Magallanez*, 290 Kan. 906, 918-19, 235 P.3d 460 [2010]). On appeal, we must first determine whether the jury instruction was legally and factually appropriate. *State v. Brown*, 300 Kan. 542, 555, 331 P.3d 781 (2014). If we find error, we then must decide whether we are firmly convinced the jury would have reached a different verdict had the error not occurred. The party claiming error has the burden of establishing prejudice. 300 Kan. at 555. We make this determination based on our independent review of the trial record, without any required deference to the district court. See *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 (2012).

In cases where a law-enforcement officer referred to a mug shot during trial testimony, our Supreme Court has decided evidentiary and mistrial questions by determining that even if the reference to mug shots constituted an error, there was not sufficient prejudice to require reversal. *State v. Trotter*, 245 Kan. 657, 662, 783 P.2d 1271 (1989); *State v. Childs*, 198 Kan. 4, 11-12, 422 P.2d 898 (1967). More recently, in *State v. Hill*, No. 110,849, 2014 WL 7653862, at *3 (Kan. App. 2014) (unpublished opinion), our court looked at a district court's failure to give a limiting instruction following a witness' reference to a mug shot. This court assumed the trial court erred in not giving the limiting instruction but found that the defendant was not prejudiced by the error.

In this case, Kennedy referenced the mug-shot system five times during his testimony. First, when the prosecutor asked about the procedure for preparing the photo lineup, Kennedy testified that he had started by going to the Sedgwick County mug-shot site. Then, when asked about how he chooses photos for the lineup, Kennedy associated the mug-shot system with a person having been arrested—saying that "[w]ith [the] mug system, you're not always getting a newer picture. You're getting their last picture from the time they were arrested." Finally, when Kennedy was asked a yes or no question about whether he had been able to locate Berney's photo from a combination of the mug-shot system and driver's-license photos, Kennedy said yes but then added that he had specifically gotten it from the mug-shot system:

> "Q: Now, using this data base of photographs and DMV records and such, were you able to locate a photo of Jeramie Berney?
> "A: Yes, I did. Through the mug system."

Together, these references at least suggest that Berney had previously been arrested.

6

In *Hill*, our court simply assumed that the district court erred by not giving a limiting instruction and then moved on to consider whether the defendant had been prejudiced. Here, we must first determine whether error occurred because we cannot so easily determine the prejudice issue in the State's favor.

K.S.A. 2014 Supp. 60-455 provides that "evidence that a person committed a crime or civil wrong on a specified occasion . . . is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion." Thus, evidence that Berney had prior arrests couldn't be used as evidence to prove that he had a disposition to steal. In *Gunby*, our Supreme Court held that when a district court admits evidence that a person committed a prior crime or civil wrong on a specified occasion to prove a material fact other than propensity, it "must give a limiting instruction informing the jury of the specific purpose for admission." 282 Kan. 39, Syl. ¶ 3.

Evidence that Berney had previously been arrested strongly suggested to the jury that he had committed a crime on a prior occasion. While an arrest is most assuredly not the same as a conviction, it is at least some evidence that the defendant had committed a prior wrong on the occasion of his prior arrest. Even though there was no objection to the admission of the evidence, our Supreme Court has held that the *Gunby* requirement for the district court to give a limiting instruction still applies. *State v. Breeden*, 297 Kan. 567, 581, 304 P.3d 660 (2013). The district court erred in failing to give a limiting instruction in Berney's case. See *Breeden*, 297 Kan. at 583-84.

We now must review the full trial record to determine whether the error is reversible. To reverse the jury's verdict and order a new trial, we must be "firmly convinced the jury would have reached a different verdict had a limiting instruction been given." 297 Kan. at 584.

7

In this case, three witnesses testified: Berney, Standifer, and Kennedy. Berney's defense at trial was that he took the tip jar with Standifer's permission. Standifer generally denied Berney's story. She testified that she had never agreed to secure drugs for him or told him to steal her tip jar. During Standifer's testimony, the State played a video of the incident, and Standifer identified Berney as the man in the video who grabbed her tip jar and left the bar. This video proves only that Berney was the man who took her tip jar, a fact that Berney doesn't deny. It does not prove whether Berney and Standifer had an agreement about taking the jar.

Other Kansas appellate decisions suggest that a reference to a mug shot does not meet the clearly erroneous standard when there is strong evidence to support the jury's verdict. See *Trotter*, 245 Kan. at 662; *State v. Childs*, 198 Kan. 4, 11-12, 422 P.2d 898 (1967); *Hill*, 2014 WL 7653862, at *3. For example, in *Hill*, although a detective's testimony clearly suggested that the defendant had previously been arrested, this court found no prejudice because there was other strong evidence that the defendant had committed the crime: An undercover informant identified Hill as the person who committed the crime, and two video recordings of the crime allowed the jury to compare the person who committed the crime with Hill.

In *Childs*, our Supreme Court also held that a witness' reference to mug shots did not result in prejudicial error under the circumstances in that case. *Childs*, 198 Kan. at 12. Finally, in *Trotter*, a witness explained that he could "obtain mug shots in pictures from our . . . identification bureau" but gave no more testimony concerning the photo lineup. When deciding whether the detective's reference warranted a mistrial, the *Trotter* court concluded that, while it did not condone such testimony, the reference to mug shots was brief and not sufficiently prejudicial to warrant a mistrial. *Trotter*, 245 Kan. at 662.

In this case, however, the jury did not hear any strong evidence to suggest that Berney had stolen the tip jar as opposed to taking it with permission. And, unlike the

testimony in *Trotter*, Kennedy's references to the mug system were not brief. Instead, the line of questioning allowed Detective Kennedy to testify that photos in the mug system are from the last time a person was arrested and that Berney's photo, specifically, was pulled from that mug system. As Berney points out, the evidence at trial amounted to a "credibility contest" between his testimony and Standifer's, and the surveillance video did nothing to disprove Berney's defense. Without other strong evidence of Berney's guilt, Kennedy's obvious suggestion that Berney had previously been arrested looms large. Berney's point that this was a credibility contest is well taken, and the jury had to conclude beyond a reasonable doubt that Standifer's testimony was true to convict Berney. Based on our careful review of the full trial record, we are firmly convinced that the jury would have reached a different verdict had it been given the limiting instruction the district court was required to give it.

We recognize that this issue arose in the trial court in a bit of an odd manner. After Kennedy first mentioned the mug-shot system as a source of photographs, the prosecutor tried to eliminate any problem by getting Kennedy to agree that he also had other state-held photos available to him, such as driver's-license records. The prosecutor then used a question seeking a yes or no response as to whether Kennedy had found a photo of Berney in the combination of mug shots and other photos. Had Kennedy followed the prosecutor's lead, we might have had no problem—but he added immediately that Berney's photo had come from the mug-shot system.

At that point, the defense attorney could have objected—but the information was not responsive to the question asked, so he had no reason to object until the extra information was volunteered. At that point, a defense attorney may conclude strategically that objecting—or requesting a limiting instruction—would further emphasize Berney's prior arrest. Even so, the district court had a duty under *Gunby* to give such an instruction. And in this case, the failure to do so was not harmless. We therefore must reverse the defendant's conviction.

9

Before concluding our opinion, we must address one additional issue. Berney separately raised on appeal a claim that the district court should have appointed new counsel for him shortly before trial. Although we are ordering a new trial, we still will address the issue since, in the absence of some other order, we presume that the same defense counsel would remain assigned to represent Berney on remand.

Two weeks before trial, Berney filed a motion for new counsel, arguing that his appointed attorney had been ineffective and that they no longer communicated effectively. The district court held a hearing on the motion at which it asked questions of both Berney and his appointed attorney. The court ultimately denied the motion.

Once a defendant seeking substitution for court-appointed counsel provides an articulated statement of attorney dissatisfaction, which may be demonstrated by showing a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication, the district court must make an appropriate inquiry to ensure that the defendant's Sixth Amendment right to counsel is protected. *State v. Brown*, 300 Kan. 565, 575, 331 P.3d 797 (2014).  Failure to make that inquiry constitutes an abuse of discretion. 300 Kan. at 576.

The district court made the appropriate inquiry into Berney's pro se motion. The district court held a hearing on the motion and addressed each of Berney's concerns, as evidenced in 28 pages of the record on appeal.

In his motion for reappointment of counsel, Berney alleged defense counsel was ineffective for (1) failing to discuss a defense strategy, (2) using coercive plea tactics, (3) failing to communicate, and (4) failing to have Berney's best interests in mind. At the hearing on the motion, the district court inquired about each of these allegations and even

asked the prosecutor about the visit log from the jail where Berney was incarcerated to determine how often defense counsel had actually met with Berney before trial.

Ultimately, Berney told the court that he did not feel his appointed counsel was representing him well because she was unable to get the charge amended to a misdemeanor. At the end of the hearing, the district court noted that Berney seemed disappointed and frustrated with the plea negotiations, but it found nothing to support a finding that counsel was ineffective; it then denied Berney's motion. We conclude that the district court made the appropriate inquiry into Berney's motion for reappointment of counsel.

Berney also contends on appeal that his appointed counsel "advocated against his motion" for new counsel; Berney contends that this separately created a conflict of interest that required the appointment of new counsel. The Sixth Amendment guarantees an indigent criminal defendant the right to the assistance of counsel in his or her criminal defense, but a defendant cannot compel the district court to appoint the attorney of his or her choice. *State v. Wells*, 297 Kan. 741, 754, 305 P.3d 568 (2013). If the trial court has a reasonable basis for believing that appointed counsel can still effectively and fairly defend the client, the court may refuse to appoint new counsel. 297 Kan. at 754. To warrant substitute counsel, a defendant must show "justifiable dissatisfaction" with his or her appointed counsel. 297 Kan. at 754. Justifiable dissatisfaction may be demonstrated by showing a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication between counsel and the defendant. 297 Kan. at 754. Berney's argument on appeal seems to be limited to a conflict of interest.

Berney cites to *State v. Prado*, 299 Kan. 1251, 329 P.3d 473 (2014), to support his argument. In *Prado*, the district court denied the defendant's motion to withdraw his plea after hearing arguments on it at the sentencing hearing. Prado expressed confusion regarding his plea agreement, and his defense counsel continued to interject and rebut his

11

arguments. The Kansas Supreme Court reversed the district court's denial, holding that the district court had been required to inquire about the conflict of interest between the defendant and his counsel. *Prado*, 299 Kan. at 1258-59. The *Prado* court found that the record demonstrated an actual conflict of interest when defense counsel advocated against the defendant's position at the sentencing hearing. *Prado*, 299 Kan. at 1260.

But Berney's case is more similar to *State v. McGee*, 280 Kan. 890, 126 P.3d 1110 (2006), than to *Prado*. In that case, McGee filed a motion for reappointment of counsel. In his motion, McGee stated that defense counsel had only met with him once and that they were having a "communications problem." McGee further claimed that defense counsel had never discussed his "side of the case" with him. At the hearing on McGee's motion, his defense counsel stated that the factual allegations in McGee's motion were untrue. On appeal, McGee claimed that he had had an "obvious" conflict of interest with his appointed counsel because "his trial counsel contradicted McGee's version of the facts." The *McGee* court found that contradicting facts did not compromise any confidential information, concede McGee's guilt, or establish that McGee's counsel had any interest that limited his representation of McGee. *McGee*, 280 Kan. at 896. Ultimately, the *McGee* court held that the disputed facts indicated a disagreement between McGee and his trial counsel but that the disagreement did not rise to the level of a conflict of interest. *McGee*, 280 Kan. at 896.

Like McGee's counsel, Berney's counsel contradicted Berney's versions of the facts of their relationship. Berney claimed that he had never met with defense counsel for longer than 15 minutes, but his counsel reported that they had never met for fewer than 15 minutes. Berney also claimed defense counsel had only met with him three times before trial. His counsel responded that she had met with him six times. The district court led the inquiry, and Berney's defense counsel simply responded to its questions. She never compromised any confidential information, conceded Berney's guilt, or established

12

that she had any interest that limited her representation of Berney. Instead, she told the district court she was prepared for trial that afternoon.

In sum, the district court had a reasonable basis for believing the relationship between Berney and his defense counsel had not deteriorated to a point where she could no longer defend Berney. See *State v. Wells*, 297 Kan. 741, 754, 305 P.3d 568 (2013). The district court was justified in refusing to appoint new counsel and did not abuse its discretion in denying Berney's motion.

We reverse the district court's judgment and remand for a new trial.

\* \* \*

LEBEN, J., concurring:  I fully join the court's opinion, but I wish to add a few comments to explain my understanding of the standard now applied in Kansas to determine whether a jury instruction was clearly erroneous. The clearly erroneous test applies when the defendant does not object to the instructions given by the trial court.

In our opinion, we have applied the standard our Supreme Court announced in *State v. Williams*, 295 Kan. 506, 286 P.3d 195 (2012). The *Williams* court said that we may reverse for clear error only when we are "firmly convinced that the jury would have reached a different verdict had the instruction error not occurred." 295 Kan. at 516. Our Supreme Court continues to state the standard in that language. See *In re Care & Treatment of Thomas*, 301 Kan. 841, 348 P.3d 576, 580 (2015); *State v. Brammer*, 301 Kan. 333, 341, 343 P.3d 75 (2015). But for a long time before *Williams*, the court had consistently stated the standard in a different way—that we may reverse for clear error where we are "firmly convinced there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred." *State v. Warrior*, 294 Kan. 484, 514, 277 P.3d 1111 (2012); accord *State v. McCullough*, 293 Kan. 970, 975, 270 P.3d 1142

13

(2012); *State v. Miller*, 293 Kan. 46, 50, 259 P.3d 701 (2011); *State v. Morningstar*, 289 Kan. 488, 494, 213 P.3d 1045 (2009); *State v. Anderson*, 287 Kan. 325, 342, 197 P.3d 409 (2008); *State v. Torres*, 280 Kan. 309, 321-22, 121 P.3d 429 (2005); *State v. Miller*, 268 Kan. 517, 524-25, 997 P.2d 90 (2000); *State v. DeHerrera*, 251 Kan. 143, 148, 834 P.2d 918 (1992).

While the language changed in *Williams*, there was no statement in that opinion that the court was changing or tightening the standard for determining whether a clear error had occurred. From the language itself, however, one might think that the standard had changed. Under the pre-*Williams* standard, one needed only to conclude (albeit firmly) that there was a "real possibility" that the jury would have reached a different verdict. After *Williams*, one must be "firmly convinced that the jury *would* have reached a different verdict." (Emphasis added.) Indeed, one of my colleagues concluded in 2013 that the language change "seem[ed] to ratchet up the defendant's burden in showing a jury instruction to [be] clearly erroneous." *State v. Adams*, No. 106,935, 2013 WL 4046396, at *13 (Kan. App. 2013) (unpublished opinion) (Atcheson, J., dissenting).

But our Supreme Court has signaled that no change was intended. In *State v. Trujillo*, 296 Kan. 625, 631, 294 P.3d 281 (2013), after noting both the pre-*Williams* and *Williams* statements of the test, the court said that it did "not discern a practical difference between the stated tests." Accordingly, the court said that it had "opt[ed] to omit the 'real possibility' language to avoid any confusion with the constitutional harmless error test," which provides that an error is harmless "where there is no reasonable possibility that the error contributed to the verdict." 296 Kan. at 631.

I add this concurrence to note my understanding that, as *Trujillo* suggests, the test we apply in practice did not change under *Williams* and later cases. And Jeremie Berney's case is a good example of the significance of this understanding.

In truth, I have no idea how this case would have been decided by the jury had the instruction error not occurred. This case came down to a credibility contest between two witnesses. Berney admitted taking the money but said Standifer had told him to—while wanting to have it look like she didn't (since she had not wanted to explain why she might be giving him money if someone saw her do so). Standifer claimed that Berney simply stole the tip jar. That's hard to sort out, especially for an appellate judge who can only read a transcript. But in the context of this case, there is a very real possibility that the jury would have come to a different conclusion had it been told it could not consider Berney's past record in determining guilt.

Federal courts perform a similar analysis; their practice also suggests that accepting the *Trujillo* statement that the Kansas test has not changed in any practical way would keep Kansas well in line with how other courts approach similar cases.

In federal courts, what we call "clear error" is called "plain error" (error requiring reversal even though there was no timely objection to the error). Many federal courts say that there is plain error when, among other things, there is a "reasonable probability" that the error affected the trial's outcome. *E.g.*, *United States v. Fast Horse*, 747 F.3d 1040, 1043 (8th Cir. 2014); *United States v. Thornburgh*, 645 F.3d 1197, 1210-12 (10th Cir. 2011); *United States v. Mazza*, 594 Fed. Appx. 705, 708 (2d Cir. 2014) (unpublished opinion); *United States v. Perez*, 514 Fed. Appx. 263, 263-64 (3d Cir. 2013) (unpublished opinion); *United States v. Cuenca-Vega*, 544 Fed. Appx. 688, 692 (9th Cir. 2013) (unpublished opinion). Were I applying that test, I would find plain error: there is a reasonable probability here that the error affected the trial's outcome.

Of course, our job is not to apply these federal cases; we must apply the precedents of the Kansas Supreme Court. While *Williams*' language requires that we now find that the jury "would have reached a different verdict" had the error not occurred, the use of the term "would" does not require that we have something approaching certainty to

find clear error. In no case has our Supreme Court indicated that it intended to change how the clearly erroneous test is applied, and in *Trujillo* it told us that it saw "no practical difference" between the two versions of the test. Based upon the understanding that our Supreme Court did not intend a substantial difference in the test's application, I find clear error in this case.