NOT DESIGNATED FOR PUBLICATION

No. 114,729

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANTHONY MICHAEL ALEXANDER,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; SARA WELCH, judge. Opinion filed September 23, 2016. Affirmed.

*Krystal L. Vokins*, of Vokins Law Office, LLC, of Olathe, for appellant.

*Andrew Hamline*, legal intern, *Steven J. Obermeier*, senior deputy district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before MALONE, C.J., HILL and ATCHESON, JJ.


*Per Curiam*: Defendant Anthony Michael Alexander appeals from the verdict of a jury sitting in Johnson County District Court convicting him of misdemeanor driving under the influence, a violation of K.S.A. 2015 Supp. 8-1567. Alexander complains that the admission of a toxicology report was unfairly prejudicial, the trial evidence was insufficient to support the verdict, and a single misstatement in the prosecutor's closing argument deprived him of a fair trial. We find no legal grounds warranting relief for Alexander and, therefore, affirm the verdict and the judgment.

1

Just before noon on June 27, 2012, Alexander was driving north on Nall Avenue in Prairie Village, Kansas, when he attempted to make a left turn on to 79th Street. Alexander oversteered his sedan and struck a minivan on 79th Street. Alexander and Heather Swan, the driver of the minivan, assured each other neither had been hurt in the low-speed collision. Alexander suggested there was no need to call the police. But Swan felt she should contact the authorities. Before she could do so, Prairie Village Police Officer Seth Meyer stopped at the intersection.

Meyer spoke first to Swan. Swan described Alexander's sedan as fishtailing into the turn, then veering toward the proper lane, and quickly back colliding with the front of the minivan. Swan told Meyer she wasn't hurt and declined medical attention. According to Swan, Alexander said he was trying to avoid trash cans in the street. But Swan didn't see any trash cans there.

Meyer then talked with Alexander. He, too, disclaimed any injury and did not ask for medical assistance. Alexander told Meyer he was looking at a GPS device and then swerved to avoid a cat that had darted in front of his car. Meyer set about taking photographs and otherwise documenting the collision. In the meantime, Prairie Village Police Officer Josh Fahlgren arrived and took charge of the scene. He questioned Alexander, who was sitting on the sidewalk. Alexander said he had not been drinking but had taken several prescription medications that morning and identified for Fahlgren various drugs he regularly took. Fahlgren detected no odor of alcohol and considered Alexander's speech to be unimpaired. Although Alexander was cooperative and retrieved his driver's license easily, Fahlgren noticed he had watery eyes and seemed unsteady. Fahlgren thought the medications Alexander had taken may have rendered him incapable of driving safely.

Fahlgren asked Alexander to perform field sobriety tests that measure balance, coordination, and the ability to assimilate and follow directions. Alexander agreed.

2

Fahlgren assessed Alexander's performance as indicative of impairment. So Fahlgren requested that Alexander take a preliminary breath test to measure alcohol in his system. Again, Alexander agreed. The test indicated no alcohol. Fahlgren concluded that Alexander was likely under the influence of drugs and arrested him for DUI. After arresting Alexander, Fahlgren searched the sedan and found pills in several containers for prescription medicines and three bottles containing unidentified liquids.

At the jail, Alexander identified seven prescription drugs he had taken. He consented to testing of his breath and to providing a urine sample. The breath test indicated no alcohol. A toxicologist with the Kansas Bureau of Investigation later analyzed the urine and detected the presence of numerous prescription drugs and methamphetamine. The toxicologist prepared a written report of her findings. The toxicology report is at the center of one of Alexander's issues on appeal.

The State ultimately charged Alexander with one count of misdemeanor DUI in violation of K.S.A. 2015 Supp. 8-1567(a)(4), prohibiting a person from driving a vehicle if he or she is "under the influence of any drug or combination of drugs to a degree that renders [him or her] incapable of safely" doing so. Alexander filed a motion in limine to exclude the toxicology report as unduly prejudicial. The district court denied the motion.

During the 1-day jury trial in September 2015, Alexander again objected to the report with no more success. The district court admitted the report for the jurors' consideration. The State also called the toxicologist to explain how she analyzed the sample and prepared the report. In addition, the Prairie Village officers testified as to what they did at the scene and the contemporaneous statements Alexander made. The State also called Swan as a witness. Alexander did not testify during the trial. The jury convicted Alexander, and the district court later sentenced him in accordance with K.S.A. 2015 Supp. 8-1567(b)(1)(B). Alexander has appealed.

For his first point on appeal, Alexander contends the district court erred in admitting the toxicology report. He argues that because the report indicates neither the level of the identified drugs in his system nor how long they had been there, it is impermissibly prejudicial. He also contends the report's reference to methamphetamine amounts to improper evidence that he committed another crime—the possession of an illegal controlled substance—contrary to the limitations on evidence in K.S.A. 2015 Supp. 60-455. Alexander says the impact of the report on the jury deprived him of a fair trial.

To prove the case against Alexander, the State had to show he was under the influence of one or more drugs when he collided with Swan. To that end, all evidence relevant to a material issue in a legal dispute generally ought to be admitted for the factfinder's consideration. K.S.A. 60-407(f). A district court has the broad discretion to exclude otherwise relevant evidence if its probative value is substantially less than the unfair prejudice it causes a party. *State v. Lowrance*, 298 Kan. 274, 291, 312 P.3d 328 (2013).

Here, the results of the scientific testing provided circumstantial evidence that Alexander had ingested an array of drugs and, in turn, inferentially supported the conclusion he may have been significantly affected by them at the time of the collision. The toxicologist told the jurors that based on her testing, she could not determine the level of any particular drug in Alexander's system the morning of the collision or when he had actually ingested a particular drug. The toxicologist agreed that she could not say Alexander was incapable of safely operating a vehicle when he drove his sedan into Swan's minivan. Those limitations go to the weight the jurors could give the test results rather than their admissibility. In K.S.A. 2015 Supp. 8-1001(i), the Kansas Legislature specifically directed that "[t]he results of *qualitative* testing [of urine] for drug presence shall be admissible in evidence and questions of accuracy or reliability shall go to the weight rather than the admissibility of the evidence." That statute controls in this case.

4

The test results were qualitative in that they showed what drugs were present in Alexander's urine but were not quantitative in showing levels or amounts. The results, of course, also corroborated the admissions Alexander made to Fahlgren shortly after the collision about his drug consumption. Accordingly, the test results were probative of a disputed issue central to the case—Alexander's degree of intoxication. In short, the test results in the report were relevant.

The report's findings were also prejudicial to Alexander in the sense they tended to show that he could have been under the influence of drugs in violation of K.S.A. 2015 Supp. 8-1567 at the time of the collision. The report, therefore, supported the State's claim that he was guilty of DUI and necessarily "prejudiced" his claim for a verdict of not guilty. But that's not unfair prejudice, since the evidence bore on the critical fact the State had to prove. Unfair prejudice arises from some other, largely extraneous fact the evidence also tends to prove that casts the party against whom it is offered in a distinctly unflattering light. Should that unfairness be markedly greater than the proper purpose for which the evidence ought to be considered, the district court may exclude the evidence.

Questions about the admissibility of evidence based on probativeness are typically entrusted to the district court's sound discretion exercised within the governing statutory dictates. *State v. Boleyn*, 297 Kan. 610, Syl. ¶ 1, 303 P.3d 680 (2013). And whether to exclude otherwise probative evidence based on undue prejudice similarly reflects a call reviewed for abuse of discretion. *Lowrance*, 298 Kan. at 291. A district court exceeds that discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

5

The district court did not abuse its discretion in admitting the toxicology report as to the prescription drugs it showed Alexander had taken, especially with the qualifications its author offered in her trial testimony and in light of K.S.A. 2015 Supp. 8-1001(i). The district court understood the governing law and the pertinent facts. The evidentiary ruling was well within the range of reasonableness other district courts would exercise in like circumstances.

We look separately and more particularly to the finding in the report that Alexander had used methamphetamine. Methamphetamine is strictly an illegal drug without any recognized medical purpose. Here, the presence of methamphetamine in Alexander's system is probative of intoxication. Alexander doesn't dispute the accuracy of the analysis as far as it goes. That is, for purposes of the appeal, he concedes he had methamphetamine in his system. But he says the limitations of the testing render that evidence impermissibly prejudicial. Again, K.S.A. 2015 Supp. 8-1001(i) undercuts the argument. The statute draws no distinction between legal and illegal drugs and admits qualitative evidence of the presence of either. Accordingly, there isn't an unfair prejudice to Alexander in that evidence simply because of the nature of the drug. See *State v. Dern*, 303 Kan. 384, 395, 362 P.3d 566 (2015) ("[T]here is little risk of undue prejudice, which turns not on whether the evidence is damaging but on whether the evidence is likely to contribute to an improper jury verdict or distract from the central issues at trial.").

Alexander's reliance on K.S.A. 2015 Supp. 60-455 is likewise unavailing. The statute generally precludes evidence that a person has committed a crime or civil wrong on a particular occasion to prove a propensity to be bad. K.S.A. 2015 Supp. 60-455(a). The rule of exclusion is subject to specified statutory exceptions. Here, however, Alexander's drug use falls outside the scope of K.S.A. 2015 Supp. 60-455, since that evidence has nothing to do with proving unlawful propensities and everything to do with proving the specific reason for his bad driving when he collided with Swan. In short, Alexander's ingestion of drugs, as shown in the toxicology report, is part and parcel of the

6

evidence bearing on the factual circumstances of the charged crime—not his wrongful conduct on a different, remote occasion. See *State v. Adams*, 294 Kan. 171, 184, 273 P.3d 718 (2012) (Evidence of defendant's drug use at the time he allegedly possessed methamphetamine is admissible without regard to K.S.A. 60-455; the statute "does not apply to a circumstance involving the *same* occurrence."); *State v. Berney*, 51 Kan. App. 2d 719, 722, 353 P.3d 1165 (2015) (K.S.A. 2014 Supp. 60-455 regulates evidence that person has "committed a crime on *some other* occasion"). (Emphasis added.)

With respect to the evidence of methamphetamine use, the district court correctly perceived the facts and applied the law. The ruling conformed to what reasonable district court judges would do. So there was no abuse of discretion.

Alexander has presented no sound reason to find the district court erred in admitting the toxicology report as evidence during the trial.

For his next point, Alexander challenges the sufficiency of the evidence supporting the jury's guilty verdict. In reviewing a sufficiency challenge, we construe the evidence in a light most favorable to the party prevailing below, here the State, and in support of the jury's verdict. An appellate court will neither reweigh the evidence generally nor make credibility determinations specifically. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014); *State v. Pham*, 281 Kan. 1227, 1252, 136 P.3d 919 (2006). The issue for review is simply whether rational jurors could have found the defendant guilty beyond a reasonable doubt. *State v. McBroom*, 299 Kan. 731, 754, 325 P.3d 1174 (2014).

Much of what we have already outlined shows why there was sufficient evidence to uphold the verdict. The State had to prove Alexander was under the influence of drugs to the degree he could not drive safely. K.S.A. 2015 Supp. 8-1567(a)(4). Taking up the second aspect of the offense, Swan's description of the collision established Alexander's

7

inability to drive safely. According to her testimony, Alexander grossly miscalculated the turn, way overcorrected, and caused his sedan to fishtail. Moreover, the driving conditions were fine. Those are indicators of a driver who has lost control of a motor vehicle, thereby creating an unsafe situation for other drivers or pedestrians anywhere near the street. This was not a minor driving error compounded by adverse weather conditions.

As to Alexander's intoxication, his own statements to the police and the toxicologist's testimony and report provide ample circumstantial evidence to show he had recently ingested drugs and likely was under their influence. In addition, Alexander's relatively poor performance on the field sobriety tests was consistent with that conclusion. Finally, Alexander gave conflicting accounts of why he blew the turn—he told Swan there were trash cans in the way, and he told Meyer he averted a cat. Jurors fairly could conclude Alexander's mendacity reflected an effort to deflect attention from what he believed to be the real reason—his drug-induced intoxication. See *State v. Appleby*, 289 Kan. 1017, 1061, 221 P.3d 525 (2009) (giving false information to law enforcement officer investigating crime admissible as evidence of consciousness of guilt); *State v. Swingle*, No. 107,856, 2013 WL 4729565, at *4 (Kan. App. 2013) (unpublished opinion) (driver's denial of having consumed alcohol despite significant evidence to contrary properly considered as consciousness of guilt in DUI case), *rev. denied* 299 Kan. 1273 (2014).

The jury received sufficient evidence to convict Alexander of DUI.

Finally, Alexander contends the prosecutor's offhand phrasing of a point in closing argument to the jurors deprived him of a fair trial. We disagree.

8

During the rebuttal argument, the prosecutor told the jurors:

> "The defense counsel talked about epilepsy and being in the oncoming—the head-on collision. You heard Officer Myer's [*sic*] testimony. He asked about injuries.
> "*Neither the defendant nor Ms. Swan had testified that they were injured.* The defendant never said he had a concussion or he hit his head or he didn't have a seatbelt on or anything like that." (Emphasis added.)

Alexander contends the prosecutor impermissibly commented on his decision not to testify in his own defense at trial. The law plainly prohibits prosecutors from suggesting defendants should be found guilty because they have chosen not to testify—a choice reflecting the exercise of their right against self-incrimination protected in the Fifth Amendment to the United States Constitution. *Griffin v. California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965); *State v. McKinney*, 272 Kan. 331, 347, 33 P.3d 234 (2001).

To assess impropriety in a prosecutor's closing argument, the Kansas appellate courts are now to use the analytical approach outlined in *State v. Sherman*, 305 Kan. ___, ___ P.3d ___, No. 113,105, filed September 9, 2016, slip op. at 28, that first considers "error" and then weighs any "prejudice" to the defendant resulting from an error. Comments made during argument will be considered error if they fall outside the wide latitude afforded a prosecutor in discussing the evidence and the law. Slip op. at 28. This simply reflects the initial step in the former analytical model. Slip op. at 22. If an appellate court finds the challenged argument to be prosecutorial error, it must then consider prejudice measured by the test set out in *Ward*, 292 Kan. 541, Syl. ¶ 6, for constitutional error. Slip op. at 28. The State, as the party benefiting from the error, must demonstrate "'beyond a reasonable doubt'" that the mistake "'did not affect the outcome of the trial'" taking account of the full trial record. Slip op. at 28 (quoting *Ward*, 292 Kan. 541, Syl. ¶ 6). That is, the appellate court must determine if the error deprived the defendant of a fair trial—a constitutional protection rooted both in due process and in the

9

right to trial itself. Slip op. at 14, 28. This prejudice analysis supplants what had been the test for assessing reversible error. See *State v. Barber*, 302 Kan. 367, 378-79, 353 P.3d 1108 (2015) (setting forth the now discarded approach based on prosecutorial misconduct and reversible error); *State v. De La Torre*, 300 Kan. 591, 608, 331 P.3d 815 (same), *cert. denied* 135 S. Ct. 728 (2014).

We, therefore, apply *Sherman* to assess Alexander's challenge to the State's argument. Here, the prosecutor plainly meant to summarize for the jurors evidence that both Swan and Alexander indicated they had not been injured in the collision. Swan testified to her lack of injuries during the trial. The State properly offered statements Alexander made to Swan and the police officers right after the collision for that purpose. Those statements, however, were out-of-court admissions rather than in-court testimony. So Alexander didn't *testify* about any injuries because he didn't testify at all. The prosecutor, then, inadvertently referred to the lack of testimony from Alexander when he really was talking about what Alexander said (or didn't say) at the time of the collision.

We are inclined to treat the reference as an isolated, unintentional phrasing that reflects the spontaneous inelegance that often arises in the unscripted discourse of trial practice. So considered, the remark doesn't strictly speaking constitute "fair comment" within the latitude afforded prosecutors. Nor is it, however, a material error in any practical sense. See *State v. Charles*, 304 Kan. 158, 175, 372 P.3d 1109 (2016) (prosecutor's repeated use of phrase "'I think'" in closing argument amounted to "verbal tic" to be avoided rather than genuinely improper argument based on deliberate expression of opinion about the evidence); *State v. Weber*, No. 102,572, 2010 WL 5139933, at *6 (Kan. App. 2010) (unpublished opinion), *rev. denied* 292 Kan. 968 (2011). We question whether any, let alone many, of the jurors listening to the argument even caught the distinction appellate counsel has carefully extracted from the transcript.

Assuming for the sake of argument the comment were in some technical way improper or "error" in the parlance of *Sherman*, we find no basis to conclude it caused any prejudice to Alexander, let alone compromised his right to a fair trial. The prosecutor's phrasing was fleeting and unobtrusive. The words were, to every appearance, chosen inadvertently. As we have indicated, there was nothing about the comment that would have drawn the jurors' attention to what Alexander asserts as the error. And the evidence against Alexander was significant, as we have already discussed. Indeed, the challenged comment conformed to the substance of the evidence, since it was undisputed Alexander never claimed to have been injured in the collision. In addition, the district court specifically instructed the jurors not to consider Alexander's decision against testifying in his own defense in reaching their verdict. The instruction would have dampened any adverse effect possibly attributable to the sort of innocuous phrasing challenged here. Having considered the disputed comment in the overall context of the trial record, we are convinced beyond a reasonable doubt that it in no way influenced the jurors to convict Alexander.

Having reviewed all of the points of error Alexander has presented, we find no reason to grant him relief.

Affirmed.