NOT DESIGNATED FOR PUBLICATION

No. 113,069

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KENNETH G. WEIS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed March 25, 2016. Reversed and remanded with instructions.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., LEBEN and POWELL, JJ.

*Per Curiam*: On three occasions, two witnesses saw Kenneth Weis near the Salvation Army's donation bins with his bicycle, going through the bins or arranging items in a cart attached to his bicycle. Based on the testimony of these two witnesses, a jury convicted him of two counts of felony theft and one count of misdemeanor criminal trespass.

On appeal, Weis complains that the testimony of one of those witnesses about *other* times Weis was at the Salvation Army—not charged here—may have improperly led to his convictions: Specifically, a witness said that he'd seen Weis there about 60

different times and that Weis had stolen from the Salvation Army before in incidents that hadn't been reported to police. When such evidence is presented, the trial judge is supposed to instruct the jury that the evidence can be considered only for a limited purpose, such as the defendant's intent, but not to show the defendant's general propensity, or tendency, to commit crimes. No such limiting instruction was given here, and Weis complains that this made his trial unfair.

After careful review of the evidentiary record, we have concluded that the lack of a limiting instruction likely influenced the trial's outcome because evidence of a defendant's prior bad acts, also known as propensity evidence, was highly prejudicial and the other evidence in the case was not especially strong. We therefore reverse Weis' convictions and remand for a new trial.

FACTUAL AND PROCEDURAL BACKGROUND

The key facts in this case come from the trial testimony of two witnesses: Police Officer Christopher Shultz and Salvation Army volunteer Steven Boher. On November 22, 2012, while on routine patrol around 12 a.m., Shultz saw Weis standing on a bicycle halfway inside one of the drop-off bins in the back parking lot of the Salvation Army. According to testimony from a Salvation Army representative, because of Weis' past dealings at the Salvation Army, he had been advised in 2005 that he could not be in the Salvation Army store or on any Salvation Army property. The Salvation Army had five large donation bins located on its property, all of which had padlocked spring-loaded doors on their donation slots. Warning signs on the donation bins read: "Stealing is a crime! Anyone caught removing items from this box will be prosecuted. This is Salvation Army Property."

Shultz confronted Weis and saw a cart attached to his bicycle containing a boxed DVD-VHS combination player and two blenders. Weis denied he was taking property

2

from inside the donation bin; rather, he told Shultz he was attempting to rearrange items inside the bin to make room for things he was donating. When Shultz looked into the bin, he determined it was not full. Shultz testified that he did not actually see Weis take any property from the bin and load it into his cart. The estimated value of the items in the cart was $60.

Roughly 6 months later, on April 28, 2013, around 3 p.m., Boher saw Weis standing on his bicycle by one of the donation bins. Boher testified that he saw Weis take a computer tower and clothing out of a donation bin and put them into a cart attached to his bicycle. Weis saw Boher and rode away. Boher went to the police station to make a report. The value of the computer tower was estimated to be $300, but the police didn't recover any allegedly stolen items. At trial, Boher admitted he could not say for certain that Weis had not initially donated the items and then changed his mind.

On May 19, 2013, Boher again found Weis by the Salvation Army donation bins. Boher testified that he had seen Weis going though clothing on the loading dock and putting it into a cart attached to his bicycle. Boher photographed Weis this time and then called the police. Law enforcement located Weis and stopped him. Weis admitted to being at the Salvation Army and to having been previously advised he was not allowed on the property.

The State charged Weis with three counts of felony theft and three counts of misdemeanor criminal trespass. Before trial, the State filed a motion under K.S.A. 2015 Supp. 60-455 to admit evidence that Weis had previously been convicted of stealing from the Salvation Army. The State argued that the conviction was relevant to prove motive, identity, and knowledge. The district judge denied the motion because she felt the "potential for prejudice outweighs the probative value and that a limiting instruction would be unlikely to protect against that prejudice."

At trial, while defense counsel cross-examined Boher about his observations of Weis, Boher interjected comments about having seen Weis at the Salvation Army donation box on many other occasions:

> "Q. [Defense:] So after Mr. Weis wheeled off, you went to the Law Enforcement Center and you made a report?
>
> "A. That time I called the cops. I even took a picture of him. I tried to get a picture with my cell phone that time before I lost him.
>
> "Q. So—
>
> "A. So I took a picture of him with the cart and stuff, but the cops couldn't find the cart or anything in it. He stashed it some place. They could never find it.
>
> "Q. So what we're talking about now that was the May 19th incident; is that right?
>
> "A. *I only seen him there about 60 different times, so I can't say.* As far as date goes, that's been a while. The second time I caught him is when I called the cops and that's when he was on his bicycle at that location there. Date wise, I can't remember. I'm getting turned around here for me.
>
> "Q. On the second, the later incident, that was in the daytime also; is that true?
>
> "A. *Both three [sic] of them were during daytime. The rest were in the evening. The ones I turned in were during the daytime, usually on a Sunday.*" (Emphasis added.)

Although the emphasized statements suggested Weis' prior bad acts and shouldn't have been admitted under the district court's pretrial ruling, the defense did not object, ask for a mistrial, or request a limiting instruction. Defense counsel was at a bit of a disadvantage, however, as the information wasn't really responsive to the questions asked, and defense counsel might have felt that objecting would further highlight the prejudicial testimony. See *State v. Berney*, 51 Kan. App. 2d 719, 726, 353 P.3d 1165 (2015).

Additionally, during redirect examination by the prosecutor, Boher again interjected highly prejudicial comments:

4

> "Q. [State:] Second time you saw him leaning halfway inside the storage bin?
>
>> "[Defense]: Objection, leading.
>
> "A. Yeah, he—
>
>> "THE COURT: Just a minute.
>
> "Q. What was the second time?
>
> "A. He was hanging inside. *I caught him so many times, it's getting hard to tell, but those were the main ones*." (Emphasis added.)

The defense again did not object to these statements, ask for a mistrial, or request a limiting instruction.

After the State presented its case, the district court granted Weis' request to dismiss three of the six charges because there wasn't enough evidence to support them: the November 2012 criminal-trespass charge, the April 2013 criminal-trespass charge, and the May 2013 felony-theft charge. The jury found Weis guilty of the remaining charges: the November 2012 and April 2013 felony-theft charges and the May 2013 misdemeanor-criminal-trespass charge. The district court sentenced Weis to 12 months' probation with an underlying sentence of 12 months in prison.

Weis has appealed to this court.

ANALYSIS

Weis argues that the district court should have given the jury a limiting instruction on the use of prior-bad-acts evidence as required by K.S.A. 2015 Supp. 60-455. Weis did not request such an instruction from the district court.

We review the legal appropriateness of a limiting instruction without any required deference to the district court's conclusions; we review the factual appropriateness in the light most favorable to the defendant. *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202

(2012). Because Weis did not raise this issue before the district court, "the failure to give the instruction will be reversible only if clearly erroneous." *State v. Gunby*, 282 Kan. 39, 58, 144 P.3d 647 (2006); see K.S.A. 2015 Supp. 22-3414(3).

Our Supreme Court has stated that the "admissibility of any and all other crimes and civil wrongs evidence will be governed by K.S.A. 60-455." 282 Kan. at 57. Subject to certain exceptions, evidence of prior bad acts is not admissible to show a person's propensity to commit crimes. K.S.A. 2015 Supp. 60-455(a). However, evidence of prior bad acts "is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." K.S.A. 2015 Supp. 60-455(b). When admitting evidence of prior bad acts under K.S.A. 2015 Supp. 60-455, "the district judge must give a limiting instruction informing the jury of the specific purpose for admission." 282 Kan. 39, Syl. ¶ 3. In other words, the court instructs the jury that evidence of prior bad acts is admissible to prove some material fact, such as intent, but not to show the defendant's general propensity to commit crimes.

Here, the jury heard testimony from Boher that he saw Weis at the Salvation Army about 60 different times, that Boher had caught Weis many times on the property, and that Weis had committed previous thefts that Boher had not reported to the police. This testimony could have strongly suggested to the jury that Weis had committed crimes on prior occasions at the Salvation Army, that Weis had several uncharged thefts and trespasses, and that Weis was a habitual thief at the Salvation Army. See *State v. Rambo*, 208 Kan. 929, 930, 495 P.2d 101 (1972) (stating testimony that witness had previously seen defendant taking property could have been interpreted by jury as prior theft committed by defendant), *overruled on other grounds by Gunby*, 282 Kan. at 56-57. While being "caught" certainly is not the same as a conviction, it could lead jurors to infer that Weis had committed prior wrongs. So evidence of prior bad acts was admitted at trial, making a limiting instruction factually appropriate. And legally, K.S.A. 2015

6

Supp. 60-455 requires a limiting instruction for prior-bad-acts evidence even if, like here, the defense doesn't object to the admission of the evidence, so the district court should have given a limiting instruction. *State v. Breeden*, 297 Kan. 567, 581, 304 P.3d 660 (2013).

The State argues that Weis invited the error. The State notes that the prior-bad-acts evidence first came out when Weis' counsel was cross-examining Boher. Although Boher added more information during the State's redirect, the State notes that this happened only after Weis' counsel had objected to the State's use of leading questions, which, the State suggests, were intended to prevent bad-acts evidence from coming out. Thus, the State argues, Weis invited the error and waived the protections of K.S.A. 2015 Supp. 60-455. See *State v. Anthony*, 282 Kan. 201, 215, 145 P.3d 1 (2006) (prior-bad-acts testimony elicited during defense's cross-examination of witness invited error).

While it is true that a defendant's own presentation of prior-bad-acts evidence waives the protection of the statute, such a waiver has only been found when the defendant testifies at trial. See *State v. Greene*, 214 Kan. 78, 82, 519 P.2d 651 (1974) (defendant's own admissions on direct examination waived protection of K.S.A. 60-455), *disapproved on other grounds by Wilbanks v. State*, 224 Kan. 66, 74, 579 P.2d 132 (1978); *State v. Ralls*, 213 Kan. 249, 255-56, 515 P.2d 1205 (1973) (defendant waived protections of K.S.A. 60-455 when he admitted prior-bad-acts evidence during direct examination). Weis didn't testify in this case. Additionally, he didn't really "present" the problematic testimony; the witness volunteered it, going well beyond the question asked to do so.

We also reject the State's claim of invited error. Courts have found invited error when the defendant specifically elicited prior-bad-acts evidence. See *Anthony*, 282 Kan. at 215; *State v. Outland*, No. 100,274, 2010 WL 744778, at *13 (Kan. App. 2010) (unpublished opinion) (prior-bad-acts testimony elicited during defendant's own cross-

7

examination was invited error), *rev. denied* 291 Kan. 917 (2011). Here, defense counsel's questions were meant to clarify the witness' testimony, not to elicit bad-acts evidence, so there was no invited error. Boher's testimony about prior bad acts could not have been anticipated from the questions asked.

Because the district court should have given the jury a limiting instruction, we must now determine whether failing to do so amounts to "clear error," which would require a new trial. See *Breeden*, 297 Kan. at 584. After reviewing the entire record, we must order a new trial if we are firmly convinced that the jury's verdict would have been different without the error. See *State v. Trujillo*, 296 Kan. 625, 630-31, 294 P.3d 281 (2013); *State v. Williams*, 295 Kan. 506, 516, 286 P.3d 195 (2012); *Berney*, 51 Kan. App. 2d at 729-32 (Leben, J., concurring); *State v. Arb*, No. 111,009, 2015 WL 5311834, at *5-6 (Kan. App. 2015) (unpublished opinion).

Without an appropriate limiting instruction as required by K.S.A. 2015 Supp. 60-455, the Kansas Supreme Court has recognized that at least three types of prejudice can follow when evidence of prior bad acts is admitted:

> "'First, a jury might well exaggerate the value of other crimes as evidence proving that, because the defendant has committed a similar crime before, it might properly be inferred that he committed this one. Second[], the jury might conclude that the defendant deserves punishment because he is a general wrongdoer even if the prosecution has not established guilt beyond a reasonable doubt in the prosecution at hand. Third[], the jury might conclude that because the defendant is a criminal, the evidence put in on his behalf should not be believed.'" *State v. Davis*, 213 Kan. 54, 58, 515 P.2d 802 (1973) (quoting Vernon's Kansas Statutes Annotated, Rules of Evidence, § 60-455, p. 376).

These types of improper prejudice to the defendant's case likely occurred here. Of the five witnesses who testified at trial, only two—Shultz and Boher—actually saw the alleged thefts. However, Shultz testified that he did not see Weis pull any items from the

bin, did not see Weis load any items onto his cart, and did not have any direct evidence to contradict Weis' statement to the officer that he was trying to make room in the bin to donate the items. Boher, meanwhile, had difficulty remembering the dates of the alleged thefts he had seen that the State had charged. While he stated that he saw Weis taking specific items, those items were never recovered. Furthermore, Boher, like Shultz, could not say with certainty that Weis had not initially donated the items and then changed his mind.

In the absence of strong evidence of guilt and in light of Boher's statements that Weis had committed thefts he did not report, that he had caught Weis "so many times," and that he witnessed Weis approximately 60 different times behind the Salvation Army, it is very likely that the jury: (1) inferred that Weis committed these crimes because he had been "caught . . . so many times," (2) determined that Weis deserved punishment because he was generally a wrongdoer, and (3) determined that because of his past wrongdoing, the theories Weis put forth in defense should not be believed. See *Davis*, 213 Kan. at 58.

It's hard in this case even to say what material fact the evidence of prior bad acts was relevant to. It may have been relevant to Weis' intent, especially on the specific occasion that Schultz said he had been partway in the donation box and Weis said he had been rearranging items to make room for his donation. The questionable testimony came up, though, in response to an attorney's attempt to confirm whether Boher was correctly remembering a specific charged event—so the jury also could have considered it with respect to how well Boher remembered what had occurred on the specific dates the State charged Weis with theft and trespass. In any case, the district court was required to determine what relevant facts this evidence could prove and to tell the jurors that they could consider it only for that limited purpose. See PIK Crim. 4th 51.030. That instruction wasn't given.

9

Finally, we note that the district court ruled the prior-bad-acts evidence inadmissible to begin with, finding that the prejudice from the admission of such evidence outweighed its probative value and that even a limiting instruction could not cure the prejudicial effect of the evidence. This finding emphasizes the extremely prejudicial nature of the evidence that was eventually allowed in at trial. While the district court, before trial, determined that a limiting instruction would not cure the prejudice, our position as a reviewing court is different. We must presume that the jury would have followed a limiting instruction if one had been given. See *State v. Sisson*, 302 Kan. 123, 131, 351 P.3d 1235 (2015). In the absence of such an instruction, however, it seems quite likely that this highly prejudicial evidence was considered for the *improper* purposes that have led to the rule requiring a limiting instruction. See *Davis*, 213 Kan. at 58. We are firmly convinced that if a limiting instruction had been given—instructing the jury that the evidence of Weis' prior bad acts was not admissible to show Weis' propensity to commit crimes—then the jury would have reached a different result. We therefore reverse Weis' convictions and remand the case to the district court for a new trial.

\* \* \*

POWELL, J., dissenting: I must dissent from the majority's decision to reverse Weis' convictions and order a new trial. The prejudice to Weis did not come from the failure of the district court to give a limiting instruction concerning the prior bad acts evidence; it was the admission of that evidence that prejudiced Weis. Because Weis' counsel never objected to the admission of the prior bad acts evidence, Weis cannot complain on appeal about the wrongful admission of such evidence. See *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). Knowing this, Weis instead complains about the failure to give a limiting instruction as required by K.S.A. 2015 Supp. 60-455. Unfortunately for Weis, and as the district court found, the evidence was so prejudicial that the prejudice from its admission outweighed its probative value.

10

Moreover, assuming, as we must, that the jury would have obeyed a limiting instruction, when viewing the evidence in the light most favorable to the State, there was sufficient evidence to convict Weis independent of any prior bad acts evidence. Accordingly, it would have made no difference in the outcome of the trial as the jury would have convicted him anyway. Therefore, in my view, we have no choice but to affirm Weis' convictions.