NOT DESIGNATED FOR PUBLICATION

No. 123,079

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOE LEIJA,
*Appellant*.


MEMORANDUM OPINION

Appeal from Thomas District Court; KEVIN BERENS, judge. Opinion filed February 4, 2022. Affirmed in part, reversed in part, and remanded with directions.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Craig L. Uhrich*, special prosecutor, and *Derek Schmidt*, attorney general, for appellee.


Before CLINE, P.J., GREEN, J., and PATRICK D. MCANANY, S.J.

PER CURIAM: Joe Leija appeals his conviction and sentence for criminal use of a weapon, in violation of K.S.A. 2018 Supp. 21-6301(a)(18), and criminal threat, in violation of K.S.A. 2018 Supp. 21-5415(a)(1). Leija argues that the statute prohibiting him from possessing a firearm is unconstitutional. He also argues three jury instruction errors and two sentencing errors. Because the trial court erred in failing to provide the jury with a limiting instruction, we reverse Leija's conviction for criminal threat, vacate his sentence for criminal threat, and remand for a new trial. Also, because we have reversed his conviction for criminal threat, it is unnecessary for us to address his prison

1

sentencing issue or to address his violent offender issue. As a result, we affirm in part, reverse in part, and remand with directions.

FACTS

Leija married Dana Carter in 2005, and they divorced in 2015. Leija was convicted of misdemeanor domestic battery in 2014. Leija and Dana had five children. They had a custody arrangement for their children that went to court as a child in need of care case. Dana described her relationship with Leija as "[b]ad." After divorcing Leija, Dana married Kenneth Carter.

Police arrested Leija in March 2019. The State charged Leija with criminal use of a weapon and criminal threat.

At the preliminary hearing, Dana testified that Leija had a handgun, but did not know enough about guns to say whether it was a revolver or a semiautomatic. She said that Leija pulled the gun out of the pickup truck.

At trial, Dana testified that she could not tell where Leija pulled the gun from, whether he took it from a pocket or was just holding it. She testified that he held the gun in the air, stroking it. She then stated that as Leija set the gun down on the dash of the pickup he "points at us. Mouths something." She also stated that she was uncomfortable testifying because "Joe's threatened me a lot of times. And he's tried to kill me." She also explained that he threatened her with a gun before.

At trial, Kenneth testified that he went with Dana to pick up one of her children from Leija's house. When they arrived, Kenneth saw Leija go inside, come back out, and pull a gun out of his pocket. According to Kenneth, Leija held the gun up, but did not point it at Dana or Kenneth. Instead, Leija pointed two fingers of his other hand and said,

2

"[T]his is for you." Kenneth testified that he was "no certified lipreader or nothing" and he could not hear what Leija said, but he thought that Leija said, "[T]his is for you."

Kenneth testified that he started recording video of Leija on his phone only after Leija put the gun on the dashboard of his pickup truck. After that, Leija's daughter came out and went with Dana and Kenneth. A short time later, Kenneth and Dana picked up Leija's son without incident.

Neither Dana nor Kenneth reported the incident to the police. The police learned of the incident after an officer conducted a home visit with one of the children at the Carters' home. The officer's body camera recorded his conversation with the Carters and was played for the jury at trial. In the video, Kenneth said that if Leija pulled a gun again, he would shoot Leija.

The jury convicted Leija of criminal use of a weapon and criminal threat. The trial court sentenced Leija to 10 months in prison for criminal use of a weapon with a consecutive 6 months in prison for criminal threat. The trial court found that Leija committed criminal threat with a deadly weapon and ordered Leija to register as a violent offender for 15 years.

Leija timely appeals.

ANALYSIS

*Did the trial court err by not giving a limiting instruction on the use of Leija's prior domestic violence conviction?*

Leija argues that the trial court clearly erred when it failed to give a limiting instruction after the State introduced evidence that Leija had committed a previous crime of misdemeanor domestic battery. The State presented evidence of this conviction

3

because it had charged Leija with criminal use of a firearm within five years of a misdemeanor conviction. That prior conviction was the reason Leija could not lawfully possess a firearm, making it an element of the criminal possession of the firearm charge. But Leija argues that his previous conviction had no bearing on whether he committed the criminal threat charge. Thus, Leija argues that it was factually appropriate for the trial court to give the jury an instruction limiting its consideration of his previous misdemeanor domestic battery conviction in determining if the State had proved the elements of the criminal use of the firearm charge.

The State, however, argues that Leija does not show that the jury would have reached a different verdict if the trial court had given the limiting instruction.

If the challenging party did not request the jury instruction below, the appellate court applies the clear error standard. The party claiming a clear error has the burden to show the necessary prejudice. *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018).

In evaluating whether an instruction rises to the level of clear error, the issue of "[r]eversibility is subject to unlimited review and is based on the entire record. It is the defendant's burden to establish clear error under K.S.A. 22-3414(3)." *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014). The clear error determination must review the impact of the erroneous instruction in light of the entire record including the other instructions, counsel's arguments, and whether the evidence is overwhelming. *In re Care & Treatment of Thomas*, 301 Kan. 841, 849, 348 P.3d 576 (2015).

When a party asserts an instruction error for the first time on appeal, the failure to give a legally and factually appropriate instruction is reversible only if the failure was clearly erroneous. *State v. Butler*, 307 Kan. 831, 845, 416 P.3d 116 (2018). The "clearly erroneous" principle is not a standard of review, i.e., a framework for determining whether error occurred. Instead, it supplies a basis for determining whether an error

requires reversal of a conviction. *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012); see *State v. Lewis*, 299 Kan. 828, 856, 326 P.3d 387 (2014).

Our Supreme Court has recognized three strong examples of prejudice that can arise from evidence of other crimes. These examples of prejudice discussed in *State v. Gunby*, 282 Kan. 39, 48-49, 144 P.3d 647 (2006), are relevant to the issue in this matter:

> "'First, a jury might well exaggerate the value of other crimes as evidence proving that, because the defendant has committed a similar crime before, it might properly be inferred that he committed this one. Secondly, the jury might conclude that the defendant deserves punishment because he is a general wrongdoer even if the prosecution has not established guilt beyond a reasonable doubt in the prosecution at hand. Thirdly, the jury might conclude that because the defendant is a criminal, the evidence put in on his behalf should not be believed.'" *State v. Brazzle*, 311 Kan. 754, 763, 466 P.3d 1195 (2020) (quoting *Gunby*, 282 Kan. at 48-49).

If prior crimes evidence is admitted under K.S.A. 60-455 in a jury trial, a limiting instruction must be provided to inform the jury of the specific purpose for which the evidence was admitted. *State v. Haygood*, 308 Kan. 1387, 1392-93, 430 P.3d 11 (2018). A defendant can challenge the lack of a K.S.A. 2018 Supp. 60-455(b) limiting instruction as clearly erroneous even if the defendant did not object to the admission of the other crimes evidence at trial. See *State v. Breeden*, 297 Kan. 567, 579-80, 304 P.3d 660 (2013).

Leija argues that the trial court erred because it admitted evidence of his prior domestic battery conviction but did not instruct the jury on how to use that evidence in its deliberations. Under K.S.A. 2018 Supp. 60-455(a), evidence that a person committed a crime on a specified occasion is inadmissible to prove such person's disposition to commit a crime on another specified occasion. If evidence of a previous crime is

admitted for a different purpose, the trial court must give a limiting instruction to the jury. *Gunby*, 282 Kan. at 48. The limiting instruction directs the jury to consider the evidence for a specific purpose, not as evidence showing the defendant's propensity to commit a crime. PIK Crim. 4th 51.030 (2020 Supp.). Leija contends that this lack of a limiting instruction prejudiced him and constitutes reversible error. For example, Leia contends that the jury could have improperly considered his prior bad act of domestic battery while it evaluated his criminal threat charge. Thus, he argues that a "real possibility" exists that the jury would have returned a different verdict on his criminal threat charge had it been given a limiting instruction.

The State responds that this supposition is not enough because Leija must firmly convince this court "'that the jury *would* have reached a different verdict had the error not occurred.'" (Emphasis added.) The State can be forgiven for mistaking Leija's burden on appeal. In *State v. Berney*, 51 Kan. App. 2d 719, 353 P.3d 1165 (2015), Judge Steve Leben wrote a concurrence which helpfully explains the disputed language here. Judge Leben explained that for a long time, Kansas appellate courts would reverse for clear error if they were "'firmly convinced there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred.'" 51 Kan. App. 2d at 730 (Leben, J., concurring) (quoting *State v. Warrior*, 294 Kan. 484, 514, 277 P.3d 1111 [2012]). The clear error standard changed its phrasing in *Williams*. 295 Kan. at 516. After *Williams*, Kansas appellate courts now reverse for clear error when they are "firmly convinced that the jury would have reached a different verdict had the instruction error not occurred." 295 Kan. at 516. But this rephrasing does not change the standard. *Berney*, 51 Kan. App. 2d at 730-31 (Leben, J., concurring).

The explanation of Judge Leben is relevant to this issue:

"Under the pre-*Williams* standard, one needed only to conclude (albeit firmly) that there was a 'real possibility' that the jury would have reached a different verdict. After

6

*Williams*, one must be 'firmly convinced that the jury *would* have reached a different verdict.' (Emphasis added.) Indeed, one of my colleagues concluded in 2013 that the language change 'seem[ed] to ratchet up the defendant's burden in showing a jury instruction to [be] clearly erroneous.' *State v. Adams*, No. 106,935, 2013 WL 4046396, at *13 (Kan. App. 2013) (unpublished opinion) (Atcheson, J., dissenting)." 51 Kan. App. 2d at 730 (Leben, J., concurring).

But whether the *Williams* phrasing seems to ratchet up the defendant's burden, it does not. This was discussed by our Supreme Court in *State v. Trujillo*, 296 Kan. 625, 631, 294 P.3d 281 (2013). The court compared these two phrasings of the clear error standard, declaring that it did not "discern a practical difference between the stated tests." 296 Kan. at 631.

In *State v. Arb*, No. 111,009, 2015 WL 5311834 (Kan. App. 2015) (unpublished opinion), this court addressed whether omitting a jury instruction on an entrapment defense was clear error.

"For purposes of deciding this case, we embrace the Kansas Supreme Court's characterization of the changed phrasing of the test as cosmetic rather than substantive, although the revised language could be read otherwise. See *State v. Berney*, [51] Kan. App. 2d[ 719], 353 P.3d 1165, 1173-74 (2015) (Leben, J., concurring) (rephrased test of *Williams* might suggest heightened burden on defendant but relying on court's representation that no substantive change intended); *State v. Adams*, No. 106,935, 2013 WL 4046396, at *13 (Kan. App. 2013) (unpublished opinion) (Atcheson, J., dissenting) (restatement of test in *Williams* 'seems to ratchet up the defendant's burden in showing a jury instruction to be clearly erroneous'), *rev. denied* 299 Kan. 1270 (2014).

"To grant Arb relief, we must be firmly convinced the jurors would have reached a different verdict had they been properly instructed on entrapment, meaning there was a real possibility of another outcome." 2015 WL 5311834, at *6.

In short, the State here argues for a burden higher than what Leija must show. Leija must firmly convince us that there was a real possibility of another outcome—that the jurors would have reached a different verdict if they had been properly instructed.

Again, *Berney* serves as a useful example. Jeramie Berney was convicted of theft. Berney testified that he loaned bartender Jo Ann Standifer $40. When Standifer could not pay Berney back, they agreed that Berney would take the tip jar from her bar while she was not looking. The parties agreed that the jury would not be told of Berney's prior theft convictions. But a police officer testified that he pulled Berney's mug shot from a database to present a photo lineup to Standifer. On appeal, Berney argued that the presence of his photo in the mug shot database was evidence of a prior crime and the trial court clearly erred by not giving a limiting instruction on this evidence.

The *Berney* court held that the testimony about mug shots was prior crime evidence and that the trial court needed to give a limiting instruction. In analyzing whether this error was reversible error, the *Berney* court pointed out that the evidence at trial amounted to a "credibility contest" between testimonies. 51 Kan. App. 2d at 725-26. Also, the surveillance video did not help resolve the issue. The surveillance video showed Berney taking the tip jar, but it could not show whether he had Standifer's permission to do so. Given the evidence, the *Berney* court ruled that the failure to give a limiting instruction was clearly erroneous and reversed Berney's conviction. 51 Kan. App. 2d at 726.

Leija correctly argues that the potential for his previous bad act to prejudice the jury was high. Unlike in *Berney*, the jury here was not told about a mug shot, which suggests a prior arrest but not necessarily a criminal conviction. Instead, Leija stipulated not just to a conviction, but to a conviction for domestic battery. Leija argues that the lack of a limiting instruction allowed the jury to simply infer that he committed criminal threat

8

based on a criminal propensity. Although the risk of prejudice here was higher than in *Berney*, the evidence in the two cases is similar in some ways.

The "credibility contest" of testimony in *Berney* sets it apart from cases with more definitive physical evidence. 51 Kan. App. 2d at 725-26. The failure to give a limiting instruction is not always clearly erroneous. In cases where the evidence was strong, appellate courts have held that the lack of limiting instruction did not prejudice the defendant.

For example, in *State v. Herrera*, No. 122,766, 2021 WL 4692825 (Kan. App. 2021) (unpublished opinion), Gerad Herrera stipulated to a prior felony conviction, but the trial court did not give the jury a limiting instruction. This court affirmed Herrera's drug-related convictions because the jury watched police bodycam video of an officer retrieving methamphetamine from Herrera's pockets. Given that evidence, this court was not convinced that the jury would have returned a different verdict if given the limiting instruction.

In *State v. Pearson*, No. 114,298, 2017 WL 1367030 (Kan. App. 2017) (unpublished opinion), this court held that the trial court's failure to give a limiting instruction was not clearly erroneous and did not warrant a reversal. Evidence of Zell Pearson's prior sales of marijuana was admitted at trial. This court held that the jury would have convicted Pearson of possession with intent to distribute even if the trial court had given a limiting instruction. The evidence showed that Pearson had over 300 grams of marijuana near a digital scale in his home. 2017 WL 1367030, at *6, 8.

Leija's case is closer to *Berney* than it is to *Herrera* or *Pearson*. In both *Herrera* and *Pearson*, the drug possession crimes had the physical evidence of the drugs themselves. But in *Berney*, the jury could only rely on the testimony of the victim who said that Berney took her tip jar without permission. The video of the incident was

unhelpful because it only showed Berney taking the tip jar, a fact not in dispute. The jury weighed credibility to determine whether Berney had permission to take the tip jar. With a limiting instruction, the jury would have reached a different verdict after weighing witness credibility. 51 Kan. App. 2d at 726. Similarly, here the jury would not have convicted Leija of criminal threat if it had been properly instructed; that is, there is a real possibility that the jury would have returned a different verdict.

The evidence that Leija committed criminal threat comes solely from the testimony of the victims. Kenneth admitted at trial that he began recording video only after Leija had made the threat. The video in *Berney* at least showed Berney taking the tip jar, an act which may or may not have been criminal depending on whether he had permission to take the tip jar. The video of Leija does not show any act which is criminal or potentially criminal. To convict Leija, the jury had to credit the testimonies of Dana and Kenneth.

At trial, Dana testified that she had had a bad relationship with Leija since their divorce and that he had threatened her with a gun before. The bodycam footage of the police interview with Kenneth showed him stating that he was fully prepared to shoot Leija if Leija drew a firearm again. The jury was entitled to credit both Dana's and Kenneth's testimony as trustworthy.

Nevertheless, neither Dana nor Kenneth initially reported this incident to law enforcement. Instead, the police only learned of this incident after an officer conducted an unrelated home visit with one of the children at Dana and Kenneth's home. Kenneth's reason for not reporting this incident to the police was because Leija had done things like this before, so it "never really bothered" them. Kenneth's statement that Leija had done things like this before is illuminating and underscores the kind of relationship that Dana and Kenneth had with Leija. Because of Dana and Kenneth's previous history with Leija, a distinct possibility existed that this incident would have not impressed itself upon their

10

memories. In other words, because this incident was not out of character for Leija, it seems that there was no reason why this incident would have etched itself in their memories.

Turning our attention again to the prejudices that can be invoked by other crimes evidence, we note the first kind of prejudice that can arise from this kind of evidence, as described in *Gunby*, is the following: "because the defendant has committed a similar crime before, it might properly be inferred that he committed this one." 282 Kan. at 48. Here, the potential prejudice following Leija's previous domestic battery conviction and his criminal threat charge is made worse because the two crimes are similar in that they both involve a personal attack against someone. As Leija points out in his brief, his previous domestic battery conviction is not dissimilar to the charged crime of criminal threat. Thus, Leija notes the following: "[T]he risk that the jury could have improperly considered the prior bad act as it evaluated the criminal threat charge is quite high."

Because the jury received evidence of Leija's previous domestic battery conviction, without a limiting instruction, the jury might have inferred from his domestic battery conviction proof of his bad character and proof of his violent nature as part of the prosecution's case-in-chief. And thus, as under the first example of prejudice described in *Gunby*, the jury here could have concluded that because Leija had committed a similar crime of domestic battery before, it might properly infer that he committed the crime of criminal threat. See 282 Kan. at 48-49. So, if a proper limiting instruction had been given to the jury, this would have avoided both the unfair prejudice and the unnecessary confusion on how the jury should use Leija's domestic battery conviction in its deliberations. For this reason, we reverse Leija's conviction, vacate his sentence for criminal threat, and remand for a new trial.

11

*Did the trial court err by failing to instruct the jury on a prior interpretation of the statute?*

Leija claims that he relied on a 2015 judicial order giving back his guns. He argues that the trial court erred by not instructing the jury on the defense of reasonable reliance on an official interpretation. The State argues that even if the 2015 order interpreted the statute, Leija could not have relied on it as an interpretation of the 2018 amendment to the statute. Because Leija could not rely on the 2015 judicial order, the trial court correctly instructed the jury when it omitted the instruction about reliance on an official interpretation.

> "When analyzing jury instruction issues, we follow a three-step process:
>
> '(1) determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal;
>
> (2) considering the merits of the claim to determine whether error occurred below; and
>
> (3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless.' [Citation omitted.]" *McLinn*, 307 Kan. at 317.

Whether a party has preserved a jury instruction issue affects the appellate court's reversibility inquiry at the third step. 307 Kan. at 317; see also K.S.A. 2020 Supp. 22-3414(3) ("No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous.").

At the second step, appellate courts consider whether the instruction was legally and factually appropriate. *McLinn*, 307 Kan. at 318. Appellate courts use unlimited review to determine whether an instruction was legally appropriate. *State v. Johnson*, 304 Kan. 924, 931, 376 P.3d 70 (2016). Courts should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that

12

would have supported the instruction. *State v. Williams*, 303 Kan. 585, 598-99, 363 P.3d 1101 (2016).

Leija argues that he believed he could lawfully possess firearms and this belief was a defense to his conviction for criminal possession of a firearm. K.S.A. 2018 Supp. 21-5207 states:

> "(b) A person's reasonable belief that such person's conduct does not constitute a crime is a defense if:
>
> . . . .
>
> (4) such person acts in reliance upon an official interpretation of the statute, regulation or order defining the crime made by a public officer or agency legally authorized to interpret such statute."

Leija was convicted of domestic battery in 2014. Then, in 2015, the trial court ordered the return of Leija's guns because they were determined not to have related to any criminal activity.

Leija asserts that the judge who ordered his guns returned to him was a public officer under K.S.A. 2018 Supp. 21-5111(aa)(3) and K.S.A. 2018 Supp. 21-5207(b)(4). Leija then argues that he possessed firearms relying on an official interpretation of the statute made by a public officer. Leija argues that the trial court should have instructed the jury on this defense. PIK Crim. 4th 52.100 (2012 Supp.). He acknowledges that he did not request the instruction but contends that failure to give the instruction was clear error.

The State argues that the instruction was not factually appropriate because the order was not an official interpretation. The State contends that, because it was an agreed order, it reflected the intent of the parties and not the trial court's interpretation. The State

13

also contends that the order directed the return of Leija's guns and did not outline any interpretation of the statute.

But Leija here defeats his own argument. He acknowledges that until 2018 the criminal possession of a weapon statute did not prohibit possession of a firearm by those convicted of domestic violence misdemeanors. K.S.A. 2018 Supp. 21-6301(a)(18) was the first such prohibition. See K.S.A. 2017 Supp. 21-6301(a). This would mean that the 2015 order, even if it were an official interpretation, would have predated when Leija committed his current crime of conviction, which was March 3, 2019. The 2018 Legislature's amendment would apply to Leija's current crime of conviction. Thus, Leija would not have been entitled to rely on the 2015 trial court order.

Even if the order were an official interpretation by a public officer authorized to make such interpretations, the trial court would not have been interpreting K.S.A. 2018 Supp. 21-6301(a)(18) because it did not yet exist. Leija's claim essentially is that he relied on an interpretation of a statute while remaining ignorant of a change to the statute. Generally, ignorance of the law is not a legally sufficient theory of defense. *State v. Roeder*, 300 Kan. 901, 915, 336 P.3d 831 (2014). The jury instruction at issue was not factually or legally appropriate. So, the trial court correctly instructed the jury.

*Did the trial court err by not instructing the jury to find that Leija must know that he was prohibited from possessing a firearm?*

Leija argues that the trial court erred when it failed to instruct the jury that he had to know that he was prohibited from possessing a firearm to be convicted of criminal possession of a weapon. The State argues that Leija misconstrues the "knowingly" element of criminal possession of a weapon.

Leija's proposed jury instruction number 8 read as follows:

14

"The defendant is charged with criminal use of weapons. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved:

"1.   The defendant knowingly possessed a firearm within five years of a misdemeanor conviction for domestic violence.

"2.   *The defendant knew that he could not possess a firearm within five (5) years of a domestic violence conviction or had notice that he could not possess a firearm within five (5) years of a domestic violence conviction.*

"3.   This act occurred on or about the 3rd of March, 2019, in Thomas County, Kansas." (Emphasis added.)

The trial court did not give Leija's proposed instruction and instead instructed the jury:  "It is not a defense that the defendant did not know of the existence of the statute under which the defendant is prosecuted." Leija claims that refusing his proposed instruction is reversible error under *Rehaif v. United States*, 588 U.S. ___, 139 S. Ct. 2191, 204 L. Ed. 2d 594 (2019).

Hamid Rehaif entered the United States on a student visa. He failed or withdrew from each of his classes at the Florida Institute of Technology. The university terminated his enrollment and e-mailed him to say that his status as a lawful alien would end unless he was admitted elsewhere. He was later arrested for shooting two firearms at a firing range and prosecuted for possessing firearms as an alien unlawfully in the United States, in violation of 18 U.S.C. § 922(g) (2018) and 18 U.S.C. § 924(a)(2) (2018). Rehaif appealed his jury conviction, arguing that the trial judge erred in instructing the jury that it did not need to find that Rehaif knew that he was in the country unlawfully. The *Rehaif* Court held that "ignorance of the law" is no excuse when the defendant has the requisite mental state for the elements of the crime but claims to be "'unaware of the existence of a statute proscribing his conduct.'" 139 S. Ct. at 2198 (quoting 1 LaFave and Scott, Substantive Criminal Law § 5.1(a) [1986]). While Rehaif knew that he possessed a firearm, he would also have to know his unlawful alien status to have the guilty state of mind required by the statute. 139 S. Ct. at 2198, 2200. The *Rehaif* Court held that it was

15

reversible error not to instruct the jury to find whether Rehaif knew he was unlawfully present in the United States.

But as the State correctly argues, *Rehaif* is simply not analogous to this case. While Rehaif was ignorant of status, Leija claims ignorance of statute. Rehaif did not know that he was unlawfully in the United States. Even if Rehaif read § 922(g), he would not have known that it applied to him unless he also knew his status as an unlawfully present alien. But Leija clearly knows his status as a person convicted of a domestic violence misdemeanor because he stipulated to this conviction at trial. Instead, Leija argues that he did not know that this status meant that he could not possess a firearm under K.S.A. 2018 Supp. 21-6301(a)(18). Leija's assertion is a classic case of claiming ignorance of the law. While Rehaif fell within an exception, Leija's conviction falls under the general rule that ignorance of the law is no excuse. See *State v. Jones*, 47 Kan. App. 2d 512, 521, 276 P.3d 804 (2012).

And *Rehaif* fails to help Leija because the statutes at issue do not have similar wording. In *Rehaif*, the federal statute stated: "Whoever *knowingly violates* subsection . . . (g), . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." (Emphasis added.) 18 U.S.C. § 924(a)(2); 139 S. Ct. at 2195 (noting that the adverb "knowingly" modifies the verb "violates"). Violating § 922 requires more than just possessing a firearm. The *Rehaif* Court's task was to discern what the statute required a defendant to know in order to violate the law. But K.S.A. 2018 Supp. 21-6301(a)(18) prohibits a person convicted of a domestic violence misdemeanor from "knowingly . . . possessing" a firearm. The fact that the adverb "knowingly" directly modifies the verb "possessing" makes the Kansas statute differ from the federal statute at issue in *Rehaif* so that *Rehaif* has little value in analyzing Leija's issue.

Similarly, Leija asks this court to revisit *State v. Howard*, 51 Kan. App. 2d 28, 339 P.3d 809 (2014). But Leija was convicted under K.S.A. 21-6301, and the statute at issue

in *Howard* was K.S.A. 21-6304. In *Howard*, this court wrestled with the fact that K.S.A. 21-6304 did not have the word "knowingly" or any other scienter requirement. 51 Kan. App. 2d at 48-49. But K.S.A. 2018 Supp. 21-6301(a)(18) does contain the word "knowingly." Neither *Rehaif* nor *Howard* is on point and Leija's discussions of them are unpersuasive. The trial court correctly instructed the jury to determine whether Leija knowingly possessed a firearm. The trial court was also correct to reject Leija's proposed instruction telling the jury to determine whether Leija knew that he could not legally possess a firearm. Because the trial court did not err in instructing the jury, we affirm Leija's conviction for criminal possession of a firearm.

*Is it unconstitutional to prohibit a person convicted of a domestic violence misdemeanor from owning a gun?*

Leija argues that K.S.A. 2018 Supp. 21-6301(a)(18) violates section 4 of the Kansas Constitution Bill of Rights. That is, he claims that the statute prohibiting him from possessing a firearm because he was convicted of domestic battery violates his right to bear arms under the Kansas Constitution. The State argues that Leija failed to preserve the issue and that the statute is constitutional. Because Leija raises the issue for the first time on appeal, we decline to review Leija's claim.

A statute's constitutionality is a question of law subject to unlimited review. *State v. Gonzalez*, 307 Kan. 575, 579, 412 P.3d 968 (2018).

While the Kansas Supreme Court has the right to interpret our Kansas Constitution in a manner different than the United States Constitution has been construed, it has not traditionally done so. See *State v. Carr*, 300 Kan. 1, 56, 331 P.3d 544 (2014) (Kansas has not analyzed its state constitutional provision granting jury-trial rights differently than the federal provision), *rev'd in part on other grounds* 577 U.S. 108, 136 S. Ct. 633, 193 L. Ed. 2d 535 (2016); *State v. Lawson*, 296 Kan. 1084, 1091, 297 P.3d 1164 (2013) (noting

that Kansas has generally interpreted its state constitutional provisions identically with their federal counterparts). But see *Hodes & Nauser, MDs, P.A. v. Schmidt*, 309 Kan. 610, 624, 440 P.3d 461 (2019) (noting instances when Kansas Supreme Court has interpreted a state constitution in a different manner than the federal constitution and concluding "section 1 of the Kansas Constitution Bill of Rights acknowledges rights that are distinct from and broader than the United States Constitution").

Appellate courts presume statutes are constitutional and must resolve all doubts in favor of a statute's validity. Courts must interpret a statute in a way that makes it constitutional if there is any reasonable construction that would maintain the Legislature's apparent intent. *Gonzalez*, 307 Kan. at 579. But see *Hilburn v. Enerpipe Ltd.*, 309 Kan. 1127, 1132-33, 442 P.3d 509 (2019) (stating the presumption of constitutionality does not apply to a statute dealing with "'fundamental interests'" protected by the Kansas Constitution).

Issues not raised before the trial court generally cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018).

There are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including the following: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the trial court was right for the wrong reason. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019).

Leija concedes that he did not raise the constitutionality of K.S.A. 2018 Supp. 21-6301(a)(18) before the trial court. But he contends that we can reach the issue because it

involves only a question of law and is finally determinative of the case and because it is necessary to serve the ends of justice. But even when an exception may allow for review of an issue for the first time on appeal, our Supreme Court has considered and rejected application of the exception in *State v. Gray*, 311 Kan. 164, 459 P.3d 165 (2020). The *Gray* court established that application of exceptions is discretionary: "The decision to review an unpreserved claim under an exception is a prudential one. Even if an exception would support a decision to review a new claim, we have no obligation to do so. [Citations omitted.]" 311 Kan. at 170. So far, several panels of this court have declined to review this precise constitutional challenge, applied to different restrictions on firearm possession. E.g., *State v. Smith*, No. 121,332, 2021 WL 4501835, at *18 (Kan. App. 2021) (unpublished opinion) (challenging conviction for criminal possession of a firearm by a convicted felon), *petition for rev. filed* October 7, 2021; *State v. Zapata-Beltran*, No. 122,414, 2021 WL 4932039, at *4 (Kan. App. 2021) (unpublished opinion) (challenging a probation condition which prohibited firearm possession), *petition for rev. filed* November 22, 2021; but see *State v. Foster*, 60 Kan. App. 2d 243, 258-67, 493 P.3d 283 (2021) (Arnold-Burger, C.J, concurring) (applying the exceptions and evaluating the challenge to a conviction for criminal possession of a firearm by a convicted felon), *rev. denied* 314 Kan. __ (September 27, 2021).

Leija here failed to give the trial court an opportunity to rule on the issue because he raised it for the first time on appeal. Also, he failed to support his contentions about section 4 with citations to the amendment's history. He further failed to support his conclusory argument that section 4 should be interpreted differently from the Second Amendment of the United States Constitution. And finally, he failed to fully brief why K.S.A. 2018 Supp. 21-6301(a)(18) violates the protections given by section 4 of the Kansas Constitution Bill of Rights. Because of Leija's failures to provide factual, historical, or legal support for his argument, we decline to review this constitutional claim.

*Did the trial court err by imposing a prison sentence rather than granting probation?*

Leija argues that the trial court erred by imposing a prison sentence rather than probation. The State argues that the issue is moot, asserting that Leija was released from prison on March 12, 2021. We decline to address this sentencing issue because we have reversed Leija's conviction and vacated his sentence for criminal threat.

*Did the trial court err in finding that Leija was a violent offender?*

Leija argues that he should not be required to register as a violent offender because the trial court, not the jury, found that Leija committed criminal threat with a firearm. The State asserts that Leija waives this argument because it is insufficiently briefed. We decline to address this issue because we have reversed Leija's conviction and vacated his sentence for criminal threat. Also, because the violent offender registration requirement attached to that conviction, the requirement to register as a violent offender is no longer at issue.

Affirmed in part, reversed in part, and remanded with directions.